THEODORE V. MASTEN, Respondent, *v.* ADELAIDE OLCOTT et al., Appellants.

In an action of ejectment, to recover possession of a small triangular piece or parcel of land, it appeared that the land in question was, prior to 1806, included in a lot known as " the saw-mill lot," and within the courses

and distances as given in the deed of said lot. In that year the owner of said lot and the owner of land adjoining it on the south entered into an arrangement to "square the line" between the lots, by which a line was located cutting off said parcel from the saw-mill lot. A fence was built upon said line which was replaced in 1820 by a heavy stone wall. From the time of the location of the line up to 1873, the land in question was inclosed and occupied as part of plaintiff's lot by him and his predecessors in title and the lot north of the line was known as the "saw-mill lot." In 1873, a partition suit was commenced to which plaintiff was made a party. The defendants' premises sought to be partitioned were described as being part of the lot "known as the saw-mill lot;" following this the courses and distances were given, as in the old deed of said lot. The land sought to be partitioned was sold under the judgment in said action, and defendant J., claiming as tenant of defendant A., the grantee, under said sale, took possession of the parcel in question. The person under whom the plaintiffs in the partition suit claimed was a party to the location of the line; he devised it as the premises "known as the old saw-mill premises." *Held*, that plaintiff was not precluded by the judgment in the partition suit from claiming title to the land in question; that the testator must have intended to devise the premises north of the stone wall; that the words "known as the saw-mill lot," in the description in the partition action, were the controlling descriptive words, and as at the time when the said action was commenced and for more than fifty years prior thereto the lot so known was north of the wall, the judgment and sale in partition did not embrace the land in question.

The description clause in a deed is to be so construed if possible as to carry out the intent of the parties; for this purpose false particulars in the description are to be rejected and less material points subordinated to the more certain and material ones when there is inconsistency between them; thus monuments generally control courses and distances.

It was claimed that plaintiff was equitably estopped by statements made by him, at the time he was served with the complaint in the partition suit, to the attorney for the plaintiff therein. It did not appear that these statements were communicated to any of the parties or that it influenced the action of the attorney. *Held*, that the claim was untenable.

Plaintiff bid off the premises on the partition sale for one of the other parties to the action. *Held*, this was not an admission that the premises included the land in question.

A survey was made after the partition sale with a view of ascertaining the location of the premises according to the courses and distances in the deed, and plaintiff pointed out the places where the old monuments were located. *Held*, that this in no way prejudiced his legal rights.

After J. had taken possession he brought an action of trespass in justice's court against plaintiff for the entry of the cattle of the latter upon the land in question, of which his complaint alleged he was in possession. The answer was a denial and an averment of possession in the defend-

ant in that action for more than twenty years. There was no plea of title, and the evidence on the trial related merely to the question of actual possession at the time of the alleged trespass. J. recovered a judgment. *Held,* that the judgment did not conclude on the point of title and in no way affected it. Also *held,* that as A., the real defendant in interest here, was not a party to the justice's court suit, as a judgment upon the title for or against J. would not have bound her, and as estoppels must be mutual, even if the question of title had been involved in that suit, it did not estop plaintiff here.

*It seems* that a judgment in ejectment against a tenant at the suit of a stranger does not bind the landlord unless he has been brought in and made a party, in fact or in substance, to the litigation.

The rule that estoppels bind parties and their privies applies only to a privity arising after the event out of which the estoppel arises.

(Argued December 4, 1885 ; decided January 19, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 9, 1883, which directed judgment in favor of plaintiff upon a verdict, and denied a motion for a new trial.

This was an action of ejectment, brought to recover possession of a triangular piece of land containing about one acre, situate in Sullivan county.

The answer set up a title to the premises in defendant Adelaide Olcott. On the trial defendants claimed, among other things, that plaintiff was estopped by reason of a judgment in a partition suit, also a justice's court judgment.

The material facts are stated in the head-note and in the opinion.

*T. A. Read* for appellants. The doctrine of estoppel is applied to promote justice and fair dealing, never to aid a fraudulent purpose. (*Royce* v. *Watrous,* 73 N. Y. 597 ; *Lawrence* v. *Seventh Nat. Bk.,* 54 id. 432.) The judgment in justice's court was a bar to plaintiff's right to maintain this action. He showed no paper title from either the State or a common source. He must show possession for twenty years, and that under a claim of title. (22 N. Y. 170 ; 72 id. 94 ; 73 id. 560.) The plaintiff in this action did not appeal from the judgment and

decision in the justice's court, and not having done so is bound by the determination of the facts there tried. (*Lengen v. Governeur*, 1 Johns. Cas. 436; *Smith v. Smith*, 79 N. Y. 634.) It need not appear, by the record of the prior suit, that the particular controversy to be precluded was then necessarily tried and determined; it is sufficient if there might have been judgment in the first action for the cause of action alleged in the second. (*Smith v. Smith*, 79 N. Y. 634.) It is only necessary to show both causes of action are identical or substantially so. (*Perry v. Dickinson*, 85 N. Y. 345; *Jordan v. Van Epps*, id. 427; *Masten v. Olcott*, 24 Hun, 587.) In this action to recover possession of the land, and establish the fact that defendant wrongfully holds, plaintiff must depend upon the strength of his own title, and not upon the weakness of the title of his adversary. (*Lamon v. Cheshire*, 65 N. Y. 130; *Wallace v. Swinton*, 64 id. 188; *Bowers v. Arnoux*, 33 N. Y. Super. 530.) A party against whom a verdict is ordered is upon appeal entitled to have every doubtful fact found in his favor. (*Colgrove v. N. Y. C. & H. R. R. R. Co.*, 20 N. Y. 492; *Hart v. E. R. Co.*, 3 Alb. L. J. 312; *Scofield v. Hernandez*, 47 N. Y. 313.)

*T. F. Bush* for respondent. Estoppels are not favored. (*Jackson v. Brinkerhoff*, 3 Johns. Cas. 101.) The affirmative is upon the party asserting an estoppel to prove that the question or matter has been in fact litigated and decided between the same parties or their privies. (*Campbell v. Butts*, 3 N. Y. 173; *Doty v. Brown*, 4 id. 71; *Duckell v. Wiles*, 11 id. 420; *Stowell v. Chamberlain*, 60 id. 272; *Dawley v. Brown*, 79 id. 398; *Ferrett v. Cowenhoven*, 11 Hun, 320; *Kerr v. Hayer*, 35 N. Y. 331; *Patrick v. Shaffer*, 94 id. 423; *Clemens v. Clemens*, 37 id. 59.) Where it appears *prima facie* from the record that the question was litigated, the party against whom the estoppel is urged may show by proof *aliunde* that it was not litigated. (*Royce v. Burt*, 42 Barb. 663; *Doty v. Brown*, 4 N. Y. 75; *Mors v. Osborn*, 64 Barb. 543.) The justice's judgment is not a bar to this action. A judgment is conclu-

sive only upon the parties thereto, or their privies, and only in respect to the grounds covered by it and the law and facts necessary to uphold it. (*People* v. *Johnson*, 38 N. Y. 63 ; *Campbell* v. *Consalus*, 25 id. 613 ; *Woodgate* v. *Fleet*, 44 id. 1.) The justice's court had no jurisdiction, and could acquire none, over the question of title to the premises. (Code of Pro., § 58 ; *Ferrett* v. *Cowenhoven*, 11 Hun, 320.)

ANDREWS, J. The complaint in the partition suit described the premises sought to be partitioned, as being part of the lot " known as the saw-mill lot," and following this designation, courses and distances were given, and the description concludes, " which said premises are known as the old saw-mill lot." The saw-mill lot, as known and occupied at the time, was separated from the lot on the south, occupied by the plaintiff, by a heavy stone wall, erected in 1820. The premises in controversy comprise about an acre of land in a triangular form, south of, and adjacent to the stone wall, which has been inclosed and occupied as part of the plaintiff's lot by him and his predecessors in title from about the year 1806. In that year, Johannas Masten conveyed to Jacob Masten and others, a lot described in the deed by the same description contained in the complaint in partition, and what was then known as the saw-mill lot, embraced the premises now in controversy. But soon after that conveyance an arrangement was entered into between the Mastens, and the owner of the lot next south of the saw-mill lot, to " square the line " between the lots, by which the line was located where the stone wall was subsequently built. Before the erection of the stone wall, and soon after the arrangement referred to, a wood fence was built on the same line by the owner of the plaintiff's lot. From that time to the commencement of the partition proceedings in 1873, a period of more than sixty years, the respective lots had been occupied according to the line fixed in 1806, and when this action was commenced the stone wall had been for more than fifty years the division fence between the lots. The plaintiff has an unquestionable legal title to the premises in controversy unless he

is concluded from asserting such title by the judgment and sale in the partition action in which he was made a party defendant. It is claimed on the part of the present defendant that as the land in controversy is included within the lines mentioned in the description in the partition proceedings, and was in fact originally a part of the saw-mill lot, the plaintiff if he claimed title thereto was bound to set up his title in the partition action and having failed to do so, the judgment and sale therein is conclusive against any subsequent assertion of such title. This would be true on the assumption that it was adjudged in that action that the premises alleged therein to have been owned in common by the parties, and of which partition was decreed, embraced the part of the original saw-mill lot now in controversy. The parties to a partition suit are bound by the judgment therein whether their interests were rightly stated or not, and an adjudication that they were tenants in common of the land adjudged to be partitioned concludes a party to the action, served with process, although he did not appear, and although his title to a part of the land partitioned was in severalty. This was a fact he was bound to put in issue, and have determined on the trial. (*Jordan* v. *Van Epps*, 85 N. Y. 427 ; *Cook* v. *Allen*, 2 Mass. 462.) It comes, therefore, to the question whether the judgment and sale in the partition action did embrace the part of the original saw-mill lot now claimed by the plaintiff. A survey, according to the metes and bounds and courses and distances in the description includes these premises. But the description by courses and distances is not the whole of the description in the partition proceedings. It begins by declaring that the premises sought to be partitioned are "known as the saw-mill lot." It is clear beyond controversy that the lot known as the saw-mill lot, when the partition action was commenced, and for fifty years prior to that time, was north of the stone wall. The stone wall was the line marked on the ground dividing the two lots. It had been located as the south line of the mill lot by agreement between the owners of the two lots and had been acquiesced in as the true line for all that long period. The conveyances of the

plaintiff's lot from 1815, had bounded it on the north by the saw-mill lot or " Masten's saw-mill lot," and the grantees understood that their grants carried them to the stone wall. Jacob Masten, who died in 1852, and under whose will the plaintiffs in the partition suit claimed was a party to the location of the line in 1806 and he devised the saw-mill lot as the premises " known as the old saw-mill premises." It is apparent that he must have intended the premises north of the stone wall, and that it was these premises which were known to him at that time as the saw-mill premises. The rules for the construction of deeds, established to effectuate the intention of the parties, authorizes the rejection of false particulars in the description of the granted premises, and subordinates the less material facts to the more certain and material ones, where there is inconsistency. (*Brookman* v. *Kurzman*, 94 N. Y. 272, and cases cited.) Thus monuments generally control courses and distances, because grants are supposed to be made with reference to an actual view of the premises. (*Wendell* v. *People*, 8 Wend. 183, 190.) It cannot be doubted that the parties to the partition action on reading the description in the complaint, would locate the land by reference to the actual inclosure of the saw-mill property, rather than by the courses and distances, which could only be located by a survey, the monuments mentioned, having been lost or destroyed, and so also as to a purchaser on a partition sale. If the devisees under the will of Jacob Masten had conveyed by the same description contained in the complaint in the partition suit, could the grantee have claimed that the grant was intended to cover the premises in controversy? If a grantee in a voluntary conveyance could not do so a purchaser on a partition sale stands in no better position. We think the words " known as the saw-mill lot," in the description in the partition action were the controlling descriptive words, and that the premises covered by the sale were the saw-mill lot as it was then known bounded on·the south by the stone wall. The judgment and sale in that action, therefore, did not conclude the plaintiff from asserting his title to the premises now in controversy.

The defendants claim that an equitable estoppel has arisen against the plaintiff, by reason of acts and conduct before, at, and after the sale in partition. The claim cannot, we think, be supported. The interview with the attorney, when the plaintiff was served with the complaint in the partition action, was casual, and what was said, so far as appears, was never communicated by the attorney to any of the other parties, nor did it influence his action. The bidding off of the property on the sale by the plaintiff for one of the other parties to the action, was not an admission that the premises sold embraced the land now in question. The act was commensurate only with the thing to which it related, that is, a sale of the land included in the description, and this, as we have seen, did not embrace any part of the plaintiff's lot. The surveys made after the sale, when the plaintiff was present were made with a view of ascertaining the location of the premises according to the courses and distances in the deed, and his pointing out the places where the old monuments were located did not in any way prejudice his legal rights.

The remaining question arises upon the claim of the defendants that the justice's judgment rendered in December, 1876, in an action for trespass brought by the defendant John Olcott, against the plaintiff, in which Olcott recovered $5 damages, is a conclusive adjudication against the title now claimed. There are several answers to this point. The action in the justice's court was for the entry of the defendants' cattle upon the land in question, trampling the plaintiff's crops, etc. The complaint alleged possession simply of the *locus in quo* in the then plaintiff and not title. The answer was a denial, and possession in the then defendant for twenty years. There was no plea of title, and the evidence on the trial related solely to the point of actual possession at the time of the alleged trespass, and no evidence was given of twenty years possession by the defendant. Possession was the only point litigated, and the question of legal title was not in any way brought into controversy. It is very plain that the judgment did not conclude on the point of title, or in any way

affect it.   The question of title was not tried before the justice, and could not be, except perhaps where a plaintiff in an action of trespass in a justice's court should be permitted without objection on the part of the defendant to give evidence of title as the ground of and to support his allegation of possession the defendant not disputing such title, and judgment should pass in favor of the plaintiff, a point, however, as to which we express no opinion. (See *Boyer* v. *Schofield*, 2 Keyes, 628; *Koon* v. *Mazuzan*, 6 Hill, 44.)   The actual question tried being the possession only, the judgment was an adjudication merely that the actual possession at the time of the alleged trespass was in Olcott, and that for the purposes of that action his possession was lawful and that Masten's cattle were wrongfully on the land.   Judgment for Olcott was inevitable under the pleadings as framed, although in law he may have been a trespasser on the premises, and although at the very time of the alleged trespass and of the rendition of the judgment the legal title and the right of possession were conjoined in Masten.   The latter by not pleading title had precluded himself from raising the question.   He elected thereby to stand or fall in the action upon the question of the actual and naked possession of the land.   (*Ehle* v. *Quackenboss*, 6 Hill, 537.)   It is extremely well settled that a judgment is conclusive only as to matters within the jurisdiction of the court by which it was rendered, and only upon such questions as the court had the power to adjudicate in the action. There is another conclusive answer to the alleged estoppel of the justice's judgment as between the present plaintiff and the defendant Adelaide Olcott, the real defendant in interest.   John Olcott, the plaintiff in the justice's suit, could not bind her title by a litigation to which she was not a party, and as estoppels must be mutual, a judgment upon the title for or against John Olcott in the trespass suit, would not bind her in the one case, or entitle her to its benefit in the other.   A judgment against a tenant in ejectment at a suit of a stranger does not bind the landlord unless the landlord has been brought in and made a party in fact or in substance to the

litigation. (*Doe* v. *Challis,* 17 Ad. & El. [N. S.] 166; *Chirac* v. *Reinecker,* 2 Pet. 613; *Sheridan* v. *Andrews,* 49 N. Y. 478; *Bennett* v. *Leach,* 25 Hun, 178.) This rests upon the broad principle of justice that a person ought not to be bound by the result of a litigation to which he was not a party. The rule that estoppels bind parties and privies is no exception. This applies only to a privity arising after the event out of which the estoppel arises and the person in privity is bound by or entitled to the benefit of the estoppel because he comes in after the fact creating the estoppel by succession or representation to the original title or interest. (*Campbell* v. *Hall,* 16 N. Y. 575.) The cases of feoffer and feoffee, lessor and lessee, ancestor and heir, are examples. (See 1 Smith's Lead. Cas. 800, n, and cases cited.) The tenancy between John Olcott and Adelaide Olcott orginated prior to the rendition of the justice's judgment and within the rule stated the landlord was not entitled to the benefit of the estoppel in favor of the tenant created thereby, assuming that the judgment determined the title as between the parties.

We think the judgment below is right, and it should be affirmed.

All concur, except RUGER, Ch. J., dissenting.

Judgment affirmed.