And the court, in discussing the law, said:

"If it should appear that, by some omission which did not really affect any of the rights of the parties, a lien was not technically created, the court still has the power to give judgment upon a just claim," etc.

The opinion goes farther, but is obiter.

In Snaith v. Smith, 7 Misc. Rep. 37, 27 N. Y. Supp. 379, the court rested its decision upon the ground that the complaint contained an equitable and a legal cause of action. In Crouch v. Moll (Sup.) 8 N. Y. Supp. 183, the lien was established, but circumstances arose before the beginning of the action which rendered it impossible or unavailing to take judgment, in that a superior lien was foreclosed, and the court held that it was not thereby ousted of jurisdiction. In Altieri v. Lyon, supra, there were liens in the first instance, and the court took, I think, a correct view of the law when it said:

"Certainly it would not be right, and we are of the opinion that it was not the intention of the Legislature, to allow a person to bring an action to foreclose a mechanic's lien, and then, if he be defeated in that action, to recover a money judgment for any sum that may be due on any contract between him and the defendant. It was, rather, the intention of the Legislature to allow a mechanic or a furnisher of materials to recover a money judgment if his action to foreclose his lien was defeated by reason of any informality in the lien, or by reason of any neglect to enforce the lien within the time required by law."

In Thomas v. Sahagan (Sup.) 10 N. Y. Supp. 874, there were valid liens. In another case, not cited by the counsel (Wick v. Ft. Plain & Richfield Springs R. Co., 27 App. Div. 577, 583, 50 N. Y. Supp. 479, 483), the court, per Follet, J., say:

"It is well settled that when liens are filed for labor performed and materials furnished, which have become inoperative by the lapse of time, judgments for the amounts due on the claims may be rendered in an action brought to foreclose one of the liens, and to determine the rights and priorities of the others."

The judgment should be reversed.

Judgment reversed and new trial granted; costs to abide the final award of costs. All concur.

---

JOHNSTON v. LONG ISLAND INV. & IMP. CO.

(Supreme Court, Appellate Division, Second Department.   June 12, 1903.)

1. SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF LAND—CONFORMITY OF DECREE—DESCRIPTION OF PROPERTY.

A contract for the sale of realty described it as beginning "at the intersection of the easterly line of the main road or turnpike now known as 'Flatbush Avenue.'" A decree for specific performance ordered a deed describing it as beginning "at the intersection of the easterly side of Flatbush avenue as now laid out." As laid out, Flatbush avenue had been widened so as to extend to the east eight feet from the old line of the main road. The description in the deed conveying the title to defendant read, "Beginning at a point in easterly side of the Flatbush turnpike road," and an insurance policy excepted the right of the city to acquire title to any portion of the premises lying within, or forming a part of, any street as actually laid out and opened, or as laid down on the town survey commissioners' map. A witness testified that the main road or turnpike, though not legally known as Flatbush avenue, had been

put down on the map as such. Buildings on the premises were placed on the line of Flatbush avenue as laid out, with platforms extending about five feet into the street. Plaintiff testified that there was some dispute as to the location of the line, and it was decided and written in the contract that it should run to the center of the street. *Held*, that the decree was erroneous, notwithstanding the phrase in the contract, "now known as 'Flatbush Avenue,'" and though to follow the contract would place the point of beginning in the street.

**2. SAME—LOSS OF TITLE—EFFECT.**

The fact that after executing a contract for the sale of realty the vendor has lost title to part thereof will not justify the court, in a suit for specific performance, in varying the decree from the terms of the contract so as to include only the land which the vendor still owns.

**3. SAME—PROVISION FOR AN ENCROACHMENT.**

A contract for the sale of realty provided that the land should be transferred, subject to encroachments as shown on the survey. The encroachment so shown was an overlap of a frame building situated on adjoining land belonging to the vendor. The encroachment was patent and visible, and plaintiff admitted that he had seen it a few months before time for closing the title, though he denied defendant's testimony that it had been the subject of talk before the contract was executed. He was familiar with the premises. *Held*, that a decree for specific performance, determining that the deed could not provide that it was made subject to an encroachment, was error.

Appeal from Special Term, Kings County.

Action by George B. Johnston against the Long Island Investment & Improvement Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-WARD, JENKS, and HOOKER, JJ.

A. G. N. Vermilya, for appellant.

F. E. Dana, for respondent.

JENKS, J. The plaintiff has judgment for specific performance by the vendor of real estate. The learned Special Term has interpreted the contract as it was written. The decree requires a deed from the vendor which apparently does not conform to the contract in two respects: (1) A part of the description in the contract reads: "Beginning at the intersection of the easterly line of main road or turnpike, now known as 'Flatbush Avenue,'" and (2) the contract provides, "Also subject to encroachments as shown on survey." The deed required by the decree reads, "Beginning at the intersection of the easterly side of Flatbush avenue as now laid out," and the decree, in effect, determines that the deed cannot provide that the conveyance is subject to an encroachment shown on the survey. The main road or turnpike is merged in Flatbush avenue as now laid out, and such avenue as so laid out is widened so as to extend to the east eight feet from the old line of the said main road. Hence, if the point of departure is from that road, it is eight feet within Flatbush avenue as now laid out. The court has found that the defendant has no title to the said strip of eight feet. I cannot conclude that the words, "now known as 'Flatbush Avenue'" are so controlling as to warrant both the rejection of the rest of the description "easterly line of main road or turnpike," and also the construction that the

words "now known as 'Flatbush Avenue' " are synonymous with "Flatbush avenue as now laid out." The deed embracing these premises which conveyed the title to the defendant in 1889 reads, "Beginning at a point in easterly side of the Flatbush turnpike road," and the insurance policy issued thereon insures the premises, excepting, inter alia, the right of the city to acquire title to any portion of the premises described in Schedule A, lying within or forming a part of any street, avenue, or road as actually laid out and opened or as laid down on the town survey commissioners' map. The plaintiff's witness McElroy testifies that the main road or turnpike, although not legally known as "Flatbush," had been put down on the map as such. It strikes me that, as the turnpike was practically merged in Flatbush avenue, or as the avenue practically took the place of the road, the phrase "known as 'Flatbush Avenue' " was inserted as a further and more familiar description. The words are not necessary or essential to a description, and, if erroneous, may be regarded as superfluous. Where there is an irreconcilable variance between a named boundary complete in itself and a further familiar description of that boundary, I think that the descriptive term must yield. Jackson v. Loomis, 18 Johns. 81, 84; Masten v. Olcott, 101 N. Y. 152, 4 N. E. 274. If the phrase "now known as 'Flatbush Avenue' " was inserted merely for the purpose I have indicated, and so has not controlling force, then I do not see how it can have the force to make the boundary "Flatbush avenue as now laid out"; for it is to be remembered, to reverse the term, that Flatbush avenue, known as the main road or turnpike, is not the Flatbush avenue as now laid out. When all of the evidence on this matter was in, and within 10 questions of the close of the case, the learned justice presiding at Special Term said: "I am against you on that. The hundred feet is from the easterly line of the old turnpike. I think that is plain from the language of the contract." The construction of the learned Special Term seems to rest mainly upon the facts that to begin from the main road or turnpike is to take a point within Flatbush avenue as now laid out, and upon the use of the descriptive term "now known as 'Flatbush Avenue.' " But suppose the evidence established conclusively that the eight feet between the line of the turnpike and Flatbush avenue as now laid out had been legally acquired from the defendant or its predecessors before the contract was executed, and that it had no legal title to convey them. This fact alone did not authorize the court to construe the contract as referring to Flatbush avenue as now laid out. The court could not recast a contract so as to make it refer to a line up to which the defendant did own, merely because it referred in express words to a line up to which the defendant did not own. I am not now weighing this circumstance as evidence of intention, but as warrant in itself for rewriting the contract so as to award other land than that described in the contract. At the time of the execution of the contract, the parties executed a lease of the same realty. There are certain one-story buildings thereon, which are on the easterly line of Flatbush avenue as now laid out. In front thereof are platforms extending about 5 feet, area and entrances; and from the line of the building, inclusive of the

areaways, to the curb, is 21 feet. I do not think that such situation of these buildings is sufficient evidence to establish a different boundary line than that described in the contract. Further, the plaintiff testifies: "There was some dispute about how far that line extends back from the front of the street—whether it should end on the west side or in the center of the street. It was decided, and written in between, that it should run to the center of the street."

I assume that the provision as to the encroachment has some purpose. The encroachment shown on the survey is the overlap of a frame building situate on the adjoining land of the vendor. For 15 feet the overlap extends over the line by about 4 feet. There is a fence along the line, which at the point of overlap departs and runs to the west so as to exclude the extension. The encroachment was patent and visible. The defendant's president testifies that it was the subject of talk with the plaintiff before the contract was executed. The plaintiff, in effect, denies this, but testifies that he had seen the overlap a few months before the time for closing the title. The plaintiff was somewhat familiar with the premises. He had worked on the adjoining premises, and had held a lease of the land for a considerable time. This is not a question of implication, but of express contract. Is it not probable that the defendant and the plaintiff intended to provide that, so long as this frame structure remained on the land of the vendor, the incidental encroachment should not be disturbed? The testimony shows that it is the ultimate purpose of the defendant to remove the structure, and, when this particular fabric was taken away or torn down, the servitude, if such it be, would come to an end. Heartt v. Kruger, 121 N. Y. 386, 24 N. E. 841, 9 L. R. A. 135, 18 Am. St. Rep. 829. The clause does not purport to secure to the vendor the mere ownership of the structure severable from the realty, but it provides that the land shall be subject to the encroachment; i. e., the structure in its present situation. Even a servitude or an easement may be created by agreement or covenant by exception or reservation in a grantor's deed. Andrus v. National Sugar Refining Co., 72 App. Div. 551, 76 N. Y. Supp. 530, and authorities cited; Washburn on Easements and Servitudes (4th Ed.) § 1. And it does not necessarily derogate from the title conveyed, for the vendee may still be vested with the realty in fee. I may go so far as to say that, although the parties did not contemplate an exception or reservation of the fee in the land whereon the structure stands, yet, for aught that appears to the contrary, they did intend that the structure should remain at rest upon the realty to be conveyed to the plaintiff. The learned counsel for the appellant insists that a man cannot encroach upon his own land. It is true that to encroach is to intrude upon, make gain upon, occupy, or use the land, right, or authority of another, as by a gradual or partial assumption of right (Anderson's Law Dictionary); to gain unlawfully upon the lands, property or authority of another (Bouvier); but the vice of the argument is that the contract does not contemplate an encroachment upon one's own land, but contemplates the land as in the vendee. The very purpose of the contract is to transfer the title to the land to which the provision applies. Washburn

on Easements and Servitudes (4th Ed.) pp. 64, 65. This is not the construction of a provision in a deed, but of the clause in a contract for a deed, and the question is, what is the intention of the parties, to be gathered from the clause, and from the entire contract, and if there be a doubt as to the meaning by consideration of the attendant circumstances, which it is presumed were considered by the parties at the time of contract. Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275, 21 Am. St. Rep. 652. I do not seek to fetter or to forecast the discretion of the Trial Term. It may be that evidence elicited thereon will justify a judgment similar to the present judgment, or that the court will require partial performance with compensation, or that it will retain the suit in order to award damages to the plaintiff or grant other or refuse all relief. I simply advise the reversal of this judgment for the reason that I think the evidence does not justify a judgment which requires the execution of a deed with the description directed, and without regard to the clause in the contract, "subject to encroachments as shown on survey," save that it gives to the vendor the right of removal within a reasonable time.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.