## J. E. PIERCE v. TEXAS RICE DEVELOPMENT COMPANY ET AL.

Decided November 2, 1908.

**1.—Trespass to Try Title—Estoppel—Pleading.**

Under the general allegation of title in an action of trespass to try title in this State, the rights of the plaintiff are as broad as the rights of the defendant under a plea of not guilty. Either party is entitled to show any title they may have, legal or equitable, or any facts which would defeat the title shown by his opponent. It is therefore not necessary for the plaintiff in such action to plead title by estoppel against the defendant.

**2.—Same—Defense by Warrantor.**

A warrantor of title to land, when made a party to a suit of trespass to try title involving the title conveyed by him, may interpose any defense that his warrantee might interpose, including estoppel.

**3.—Estoppel in Pais—Duty to Speak.**

If one remain silent when it is his duty to speak, he will not be heard to speak thereafter to the injury of one who was induced to act by his silence. But in the absence of the duty to speak, no rights can be lost or acquired by silence.

**4.—Same—Possession of Land as Notice of Title.**

Actual possession of land by the owner is notice to all the world of his claim. One who buys land in the possession of another from a person other than the party in possession, will not be heard to say, for the purpose of estoppel, that he did not know of the claim of the party in possession. Such possession is equivalent to actual notice and, having notice, the purchaser could not claim that he was misled by the silence of the party in possession. Under such circumstances no duty rests upon the owner to give other notice of his title to a prospective purchaser.

**5.—Same—Charge—Evidence.**

In an action of trespass to try title wherein the plaintiff relied upon title by estoppel in pais, evidence considered, and held insufficient to justify the court in submitting the issue to the jury.

Appeal from the District Court of Matagorda County. Tried below before Hon. Wells Thimpson.

*Gaines & Corbett* and *Lane, Jackson, Kelly & Wolters,* for appellant.— Under the state of the pleadings of all the parties in this case, no issue of estoppel could properly have been raised by plaintiff or its warrantors, and it was error for the court to submit a charge upon such issue. Hartley's Digest, art. 3235; Rev. Stats., art. 5257; Mims v. Mitchell, 1 Texas, 443; Ramsey v. McCauley, 2 Texas, 189; Coles v. Kelsey, 2 Texas, 541; Caldwell v. Haley, 3 Texas, 317; Rivers v. Foote, 11 Texas, 662; Hollingsworth v. Holshousen, 17 Texas, 41; McSween v. Yett, 60 Texas, 183; Hines v. Lumpkins, 47 S. W., 818; Willie v. McNeill, 57 Texas, 474; Leach v. Millard, 9 Texas, 551; Hubby v. Camplin, 22 Texas, 582; Stroud v. Springfield, 28 Texas, 671; Pilcher v. Kirk, 55 Texas, 208; Joyner v. Johnson, 84 Texas, 465; Jones v. Andrews, 62 Texas, 667; Johns v. Hardin, 81 Texas, 41; Blume v. Rice, 12 Texas Civ. App., 4; Holland v. Thompson, 12 Texas Civ. App., 475; Dalby v. Booth, 16 Texas, 565; Morrow v. Fleming, 69 S. W., 244; McDonald v. Downs, 45 Texas Civ. App., 215.

The court erred in submitting the special charge asked by the executors of the Pierce estate, because it was based upon a state of facts unsupported by the evidence in the case, and the evidence adduced upon the question of estoppel was wholly insufficient to create an estoppel against defendant Pierce, and same should not have been submitted as an issue to the jury. Bridges v. Johnson, 69 Texas, 717; Edwards v. Dickson, 66 Texas, 617; Bynum v. Preston, 69 Texas, 291; Equitable Mortgage Co. v. Norton, 71 Texas, 689; Nichols-Steuart v. Crosby, 87 Texas, 453; Ragsdale v. Gohlke, 36 Texas, 288; Williams v. Chandler, 25 Texas, 11; Page v. Arnim, 29 Texas, 72; Mayer v. Ramsey, 46 Texas, 375; Echols v. McKie, 60 Texas, 42; Love v. Barber, 17 Texas, 317; Scoby v. Sweatt, 28 Texas, 730; Lewis v. Brown, 87 S. W., 705; Boggs v. Merced, 14 Cal., 367; Hill v. Epley, 31 Pa., 334; Thayer v. Bacon, 3 Allen, 163; Brewer v. Boston & W. R. R. Co., 5 Metcalf (Mass.), 478; 2 Pomeroy's Equity (3d ed.), secs. 804 and 805.

*Proctors, Vandenberge & Crain,* for appellees.—Where plaintiff sues in trespass to try title, and the defendant pleads "not guilty" and the statutes of limitation, without specially pleading the defendant's title, it is wholly unnecessary and improper for plaintiff to plead estoppel, inasmuch as he can prove same under his petition in trespass to try title. McSween v. Yett, 60 Texas, 183; Lybrand v. Fuller, 59 S. W., 50; Howe v. O'Brien, 45 S. W., 813; Edwards v. Barwise, 69 Texas, 84; Bumpass v. McLendon, 101 S. W., 491.

Being vendor and warrantor of the Holmes survey, wherever situated, when the appellant became apprised of the fact that his vendee was about to convey this particular one hundred and twenty-nine acres of land as a part of the Holmes tract, based upon a survey and field notes which so located the Holmes as to include this one hundred and twenty-nine acres, it was appellant's affirmative duty to call to the attention of the purchaser, Moore, the error, if any, in the location of the Holmes survey, and if appellant did not do this he is in the attitude of having

knowingly suffered Moore to purchase and expend money on a tract of land in the belief that it constituted a part of a particular original survey as to which the appellant was himself both vendor and warrantor, and even if appellant did this passively he should not afterwards be permitted to exercise his legal right against Moore. 11 Am. & Eng. Ency., pp. 429-431; 16 Cyc., pp. 765-767, 773 and 791-795; note to 57 Am. Rep., 428-433; note to 10 Am. St. Rep., 21-22; Burleson v. Burleson, 28 Texas, 383; Kirk v. Hamilton, 102 U. S., 68.

PLEASANTS, CHIEF JUSTICE.—This is a suit in form of an action of trespass to try title brought by the Texas Rice Development Company against appellant J. E. Pierce, to recover 129 acres of land alleged to be a part of the Edward L. Holmes survey in Matagorda County. In addition to the usual allegations in an action of trespass to try title, plaintiff alleges, in substance, that it purchased the land in controversy from W. C. Moore, paying him therefor the sum of $9 per acre; that said Moore purchased same from the executors of the will of Abel H. Pierce, deceased, paying therefor the sum of $5 per acre, and that the said Moore and the said executors, in conveying said land, entered into covenants of general warranty binding themselves to warrant and forever defend the title to said land in their said vendees, their heirs and assigns. The prayer of the petition is for service upon the said Moore and said executors, and for judgment against Pierce for all of the land sued for, and in the alternative for judgment against said Moore and said executors on their said warranties for the purchase price of any portion of said land in which plaintiff may fail to show title.

The defendant Pierce answered by plea of not guilty and by special pleas of limitation of three, five and ten years.

The defendants, Moore and executors of the estate of Abel H. Pierce, by their answers admitted the execution of the warranty deeds as alleged in plaintiff's petition, and each of said defendants especially denied that the defendant J. E. Pierce had any title to the land, and joined in plaintiff's prayer for the recovery of the land against him.

The trial in the court below was by a jury, and resulted in a verdict and judgment in favor of plaintiff.

The only issue raised by the evidence was that of boundary. If the land in controversy is a part of the Holmes survey, plaintiff was entitled to recover. If not included in the boundaries of said survey, defendant Pierce was entitled to a verdict, unless estopped from asserting title thereto by reason of facts hereinafter set out.

The evidence was conflicting upon the issue of boundary, and the record shows that that issue was not passed upon by the jury, and it would therefore be improper for us to express any conclusion upon this fact issue.

The Holmes survey, which, according to the patent by which it was granted by the State, contains 258 acres of land, was conveyed by the defendant J. E. Pierce to Abel H. Pierce by deed of general warranty on July 24, 1887. This deed describes the land as follows: "That certain tract of land containing two hundred and fifty-eight acres granted to Edward L. Holmes, lying and being situated in Matagorda County,

and is situated between Cash's creek and the east Coranchua, and adjoins the G. Payne and Nathaniel Reed grants."

After the death of Abel H. Pierce his executors sold the Holmes survey, along with other lands belonging to said estate, to the defendant, W. C. Moore. After executing the contract of sale to Moore, but before the execution of the deed to him, the executors had the land surveyed. According to this survey the 129 acres in controversy, which is within the inclosure and in the possession of the defendant J. E. Pierce, is a part of the Holmes survey. After this survey was made, and before the execution of the deed to Moore, A. P. Borden, one of the executors, had a conversation with the defendant Pierce which is thus detailed by Borden:

"I saw him (meaning J. E. Pierce) in the hospital at Galveston. I think it was in March sometime. Mr. Leckie had made a survey before—the year previous—and he had compiled his field notes, and I was down at Galveston one day and met Mr. John E. Pierce out at the hospital. I went out to see Mr. Pierce. He asked me how much the survey (meaning the part of the E. L. Holmes survey) covered. I told him 129 acres, and he said that Leckie did not get within a mile of it. I said, 'You gave him the starting point;' and he said (meaning Mr. Pierce) that he (Leckie) did not get within a mile of it, and that he (Pierce) knew right where it was (meaning the Holmes survey). I said, 'I want to get it right before we deed this property.' Mr. Pierce said, 'Send him back out there; I will show him right where it is' (meaning Mr. Leckie). Mr. Pierce says, 'He won't survey for me' (meaning Leckie). I says, 'Yes, he will.' I told him I would have Mr. Leckie go back down there; if he could convince him (Leckie) that he was wrong in the first survey I would pay all expenses, and that if he did not convince him (meaning Leckie) that he (meaning Mr. Pierce) was right, that he would have to pay him (Leckie). I told him that, and he said that it was a very satisfactory agreement with him; that was the understanding we had."

Borden further testified as follows: "Mr. Leckie made another survey. After the second survey Mr. Leckie made no report to me, and I did not pay him for the survey. Was never called upon to pay it. Our agreement was this: If Mr. Pierce convinced Leckie that he (Leckie) was wrong, I was to pay for the survey; otherwise Mr. Pierce was to pay for it. I do not know whether the survey was ever paid for or not. I never was called on to pay for it and never asked any questions about who paid for it. I did not make a deed to Mr. Moore until after the second survey had been made under that agreement. Mr. Pierce never made any complaint to me after the survey was made, and I conveyed the land to Mr. Moore afterwards. I held up the deed until the survey was made. I depended upon the agreement with Mr. Pierce as to the second survey."

At the time of the conversation above quoted the defendant Pierce knew that Borden was having the land surveyed for the purpose of conveying it to Moore. Pierce testified in the case, and did not deny this conversation further than to say he did not remember it. He admitted, however, that he paid Leckie for making the second survey.

The land in controversy is included within the field notes of the

Holmes survey, as set out in the deed from the executors of Abel H. Pierce to defendant Moore. As before stated, the testimony as to whether it is included in the original field notes of the Holmes survey is conflicting, and that issue was not determined by the jury. Upon this evidence the trial court, at the request of the executors of Abel H. Pierce, gave the jury the following instruction:

"If you believe from the evidence that the executors of the will of A. H. Pierce were contemplating a sale of a certain tract of land in Matagorda County to W. C. Moore, in which tract was included that portion of the E. L. Holmes survey for which plaintiff sues herein, and that the defendant J. E. Pierce knew of such contemplated sale; and if you believe that the defendant A. P. Borden and Mamie P. Withers had said land surveyed, and that J. E. Pierce knew where the lines of said Holmes were located, and the said J. E. Pierce complained of such location; and if you believe that subsequently A. P. Borden and J. E. Pierce agreed upon a resurvey of said survey, and that they agreed that, if such resurvey should determine the true location of the Holmes survey to be in the position as shown by the first survey, that J. E. Pierce should pay for such survey, but the location should be determined to be in another and different position; and if you further believe that such resurvey determined the location of the said Holmes survey to be in the same position in which it was located by the first survey; and if you believe that said J. E. Pierce, being informed of the result of the second survey, then paid for such survey, and made no protest against same either to the said A. P. Borden or Mamie Withers, or to W. C. Moore, but permitted said sale to be made to said W. C. Moore, and permitted said Moore to pay for same, then you are charged that the said J. E. Pierce is now estopped from denying the correctness of said resurvey."

There is an evident omission of a clause in this charge as copied in the record, but in view of the testimony as to the agreement between Borden and Pierce it can be readily supplied.

The verdict returned by the jury is as follows: "We, the jury, find for plaintiff as prayed for in original petition. This decision is arrived at by special charge as to estoppel. S. M. Jeter, foreman."

Appellant complains of the charge above set out on the ground that the issue of estoppel was not raised either by the pleading or the evidence in the case.

There is no merit in the objection that estoppel was not pleaded. Plaintiff not having specially pleaded its title, it could, under the general allegations of its petition, prove any title legal or equitable which it might have to land, or any fact tending to prove title either legal or equitable. We understand the rule to be that the rights of a plaintiff under the general allegation of title in an action of trespass to try title, when no special title is pleaded, and the defendant answers by a plea of not guilty and pleads no special defense other than limitation, are as broad as the rights of the defendant in such case under his plea of not guilty. In this state of pleading either party is entitled to show any title they may have, either legal or equitable, or any facts which would defeat the title shown by his opponent. McSween v. Yett, 60 Texas, 183; Edwards v. Barwise, 69 Texas, 85; Lybrand v. Fuller, 24 Texas

Civ. App., 296; Wade v. Boyd, 24 Texas Civ. App., 492; Welder v. Lambert, 91 Texas, 510.

It is clear that if Moore acquired title to the land by estoppel that the title thus acquired by him passed to his grantee, the plaintiff, and it is equally clear that the executors of the Pierce estate, who are bound to Moore on their warranty, can, as against the defendant Pierce, show any title which Moore might have to the land.

We agree with appellant, however, that the evidence does not raise the issue of estoppel. It is not contended by appellee that the agreement between Pierce and Borden, before set out, would estop Pierce from claiming the land as against the executors of the A. H. Pierce estate, but it is earnestly insisted that the failure of Pierce to notify Moore of his claim to the land, when he knew that Moore was about to purchase it from said executors, would estop him from afterwards setting up his claim thereto against Moore, who purchased without actual knowledge of Pierce's claim so far as is shown by the record.

No principle of equity is better established, and none appeals more strongly to the enlightened conscience than that embodied in the rule that, if one remains silent when it is his duty to speak, he will not be heard to speak thereafter to the injury of one who was induced to act on the faith of his silence. From the statement of the rule it is manifest that, unless the duty to speak exists, no rights can be lost or acquired by silence.

In considering the question of estoppel against defendant Pierce, by reason of his failure to notify Moore before his purchase of his claim to the land, the title to the land must be regarded as in said defendant at the time Moore purchased, otherwise no issue of estoppel could arise, because no one can be held to be estopped from claiming rights he never possessed. The evidence shows that Pierce was in possession of the land. If appellee's contention is correct, then it must be held that whenever one who owns and is in possession of land learns that another is claiming same, and intends to convey it to a third party, it is the duty of the owner in possession to notify the third party of his claim and warn him not to purchase the land.

We can not believe that any such duty devolves upon the owner of the land. His possession is notice of his claim to all the world, and in the absence of such possession the registration of his deed is such notice, and one who buys land in the possession of another from a person other than the party in possession will not be heard to say that he did not know of the claim of the party in possession.

We do not think that the fact that the defendant Pierce had conveyed the Holmes survey to A. H. Pierce, the testator of the executors, by warranty deed, in any way affects the question. If the land was a part of the Holmes survey there can be no question of estoppel in the case, and if it is not, Pierce's deed conveying said survey in no way affected the notice which his possession gave of his claim to the land in controversy. Moore bought charged with notice of all the facts shown in his chain of title, among which were the boundaries of the Holmes survey conveyed by the defendant Pierce to A. H. Pierce, and he would not be heard, as against the defendant Pierce, to deny knowledge of such boundaries.

We think the facts relied upon by appellees are lacking in two of the necessary elements of an estoppel, viz.: Moore, the party in whose favor the estoppel is asserted, was charged with notice of appellant's claim, and will not be heard to say that he did not have notice thereof, and there is no evidence that he relied and acted upon the failure of defendant Pierce to give him notice of the fact that he would not be bound by the second survey of the land under his agreement with Borden. There is no evidence that Moore ever heard of said agreement, and if it had been made known to him there is nothing in the agreement or in the subsequent action of the parties thereunder which would have justified the conclusion on his part that Pierce had abandoned his claim to the land. The only fair presumption from the evidence is that in the purchase of the land Moore did not rely upon any act or failure to act or speak on the part of defendant Pierce, but purchased solely on the faith of the record and the claim and warranty of his grantors.

The cases cited by appellee fall far short of sustaining their contention. In the first case cited, Burleson v. Burleson, 28 Texas, 383, a land certificate was issued to John Burleson, Sr., and was subsequently transferred by him to John Burleson, Jr. Margaret Burleson, who was the wife of John Burleson, Sr., at the time the certificate was acquired, died prior to the transfer above mentioned. At the time this transfer was made the plaintiffs in the case, who were the heirs of Margaret Burleson, were present, and made no objection to the transfer by their father. The defendant, John Burleson, Jr., and the other defendants who claimed under him, pleaded that plaintiffs were estopped under these facts from asserting their claim to a one-half interest in the land patented under said certificate. It was shown that John Burleson, Jr., knew of plaintiff's interest in the land at the time of his purchase. In discussing the claim of estoppel predicated upon these facts the court says: "The effect of an estoppel *in pais* is to prevent the assertion of an unequivocal right, or preclude a good defense, and justice demands that it should not be enforced unless substantiated in every particular. 12 Barb., 1287. The ground upon which the estoppel proceeds is fraud, actual or constructive, on the part of the persons sought to be estopped. What will amount to the suggestion of a falsehood, or the suppression of the truth, may be difficult to determine in all cases; but some turpitude, some inexcusable wrong, that constituted the direct motive or induced the outlay or purchase, is necessary to give silence or acquiescence the force of an estoppel *in pais.* Hence, the ignorance of the true state of the title on the part of the purchaser must concur with willful misrepresentation or concealment on the part of the persons estopped. 1 Gil., 430. If the real owner knowingly permit a third person to purchase property without notice of his claim from the apparent owner, he will be estopped from asserting his title against such innocent *bona fide* purchaser. 8 B. Mon., 539.

"The true doctrine is well expressed in Story, Eq., section 386. In order to apply an estoppel it is indispensable that the party standing by and concealing his rights should be fully apprised of them, and should, by his conduct or gross neglect, encourage or influence a purchaser; for if he be wholly ignorant of his right, or the purchaser know them, or if his acts, silence, or negligence do not mislead, or in any manner affect

the transaction, there can be no just inference of actual or constructive fraud on his part. Rights can be lost or forfeited only by such conduct as should make it fraudulent and against conscience to assert them.

"If one act in such a manner as intentionally to make another believe that he has no rights, or has abandoned them, and the other, trusting to that belief, does an act which he otherwise would not have done, the fraudulent party will be estopped from asserting his right. 5 Ired., Eq., 355." The plea of estoppel was not sustained in this case because the defendant had notice of plaintiffs' claim.

Certainly the failure of Pierce to notify Moore that he was claiming the land in his possession, which the executors of A. H. Pierce were proposing to sell Moore, was not "actual or constructive fraud" on his part, nor did it amount to "turpitude, inexcusable wrong" or "gross negligence."

In the case of Kirk v. Hamilton, 102 U. S., 68, the party against whom the estoppel was asserted was a party in the receivership suit in which the property in controversy was sold, and with knowledge of said sale made no objection to its approval. After the sale he made claim to a small strip of the property which adjoined that on which he resided, but subsequently abandoned his claim thereto, and stood by and permitted the purchaser to expend large sums of money in improving the property. Subsequently he brought suit for the property, claiming that the sale by the receiver was a nullity. In deciding this case the court says:

"He knew, as we have seen, that the defendants claimed the property under a sale made in an equity suit to which he was an original party. The sale may have been a nullity, and it may be that he could have repudiated it as a valid transfer of his right of property. Instead of pursuing that course he, with a knowledge of all the facts, appeared before the auditor and disputed the right of certain creditors to be paid out of the fund which had been raised by the sale of his property. He forbore to raise any question whatever as to the validity of the sale, and by his conduct indicated his purpose not to make any issue in reference to the proceedings in the equity suit. Knowing that the defendants' claim to the premises rested upon that sale, he remained silent while the latter expended large sums in their improvement, and, in effect, disclaimed title in himself. He was silent when good faith required him to put the purchaser on guard. He should not now be heard to say that that is not true which his conduct unmistakably declared was true and upon the faith of which others acted."

In the case of Johnson v. Byler, 38 Texas, 606, Byler conveyed the land in controversy to Swan, reserving a vendor's lien to secure three promissory notes executed in part payment of the purchase money. When the notes became due Byler demanded payment, and Swan informed him that he did not have the money, but that he could sell the land to Johnson for Confederate money, which he would do, provided Byler would accept such money in payment of his notes. Byler agreed to this, and Swan sold to Johnson for Confederate money and tendered the amount due on the notes to Byler, who refused to accept it. Thereafter Byler sued Swan on the notes, foreclosed his vendor's lien, bid in the land at the foreclosure sale on his judgment, and then sued Johnson,

who was not made a party to the foreclosure suit, in trespass to try title. Upon these facts the court held that Byler was estopped from denying the "validity of the sale to Johnson."

We have ,copied from the cases cited by appellee at this length because they clearly recognize the rule that, to create an estoppel of this kind, there must be want of notice of the truth on the part of the person claiming the estoppel, and he must have relied upon and been deceived by the silence of the person sought to be estopped.

We think the charge of the court clearly and fully presented the issues raised by the evidence upon the question of boundary, and none of the assignments complaining of the refusal of the court to give special instructions requested by the appellant should be sustained.

If any error is shown by any of the remaining assignments it is not such as is likely to occur upon another trial, and it is therefore unnecessary to discuss said assignments.

Because the court erred in giving the instruction upon the issue of estoppel above set out the judgment is reversed and the cause remanded.

*Reversed and remanded.*