RAYMOND B. BALL, Plaintiff, *v.* LOUIS E. BALL and Others, Defendants.

Supreme Court, Chautauqua County, August 13, 1930.

*John W. Remington* and *Kenneth B. Keating* [*Evan Jones* of counsel], for the plaintiff.

*Killeen & Sweeney* [*Henry W. Killeen* and *Francis J. Maloney* of counsel], for the defendant oil companies.

O'MALLEY, J.  The corporate defendants by their joint answer and by way of defense allege:

(1) They are the owners, by assignment of a lease dated May 6, 1922, made by Leason J. Ball and plaintiff, the then owners of the premises; (2) that on April 21, 1926, Leason J. Ball and wife, the then owners thereof, leased the same to the defendants, and under each and both of said leases they have full authority to do the things and acts complained of by plaintiff; and, (3) that in 1925, plaintiff conveyed his interest to Leason, who, thereby, became the sole owner, and who represented he was the sole owner; that defendants relied on said representation; that plaintiff knew of said representation, and of the existence of the lease and that rent was paid thereon to Leason, and acquiesced therein, and that by reason thereof, plaintiff is estopped to assert any interest in the premises.

There is little dispute as to the facts.  Plaintiff claims he owns an undivided one-half interest in the premises which consists of a farm situated in the township of Hanover, Chautauqua county.  In 1920, plaintiff and Leason J. Ball, became the owners thereof as tenants in common.  They lived on and worked the farm from 1920 until April, 1925, when plaintiff purchased a farm in Cattaraugus county, to which he removed.  He took some of the stock and tools from the Chautauqua county farm and, claims he sold the remainder of his stock and tools to Leason for the sum of $2,000.  The defendant companies claim plaintiff sold his interest in the farm to Leason as well as his interest in the stock and tools at that time.

On May 6, 1922, they leased the premises to Dickinson and Peek for the " purpose of mining and operating for oil and gas for the term of one year, and as much longer as the rent for failure to commence operations is paid."  This lease is now owned by the corporate defendants.  The rent on said lease was paid from May 6, 1922, to May 6, 1926, and a tender of payment of rent has been made from May 6, 1926 to the time of trial.

By the terms of the lease, the lessees had the right " to surrender it for cancellation."  It was never surrendered in fact, and has always been in the possession of the lessees or their assignors.

On April 21, 1926, Leason J. Ball and wife leased the premises to the corporate defendants herein, " for the purpose of mining and operating for oil and gas." Leason J. Ball died intestate June 6, 1929, leaving him surviving the defendants Ellen Ball, his widow, Louis and Anna Ball, his father and mother respectively, and the plaintiff, his brother. None of the individual defendants has answered.

In July of 1929, the defendant companies entered upon the premises, drilled for and found gas and are removing the same.

Plaintiff contends the lease of May 6, 1922 made by himself and Leason was null and void when the lessees took possession in 1929, and drilled for gas because by the delivery and acceptance of the 1926 lease, the parties mutually abandoned and surrendered the lease of 1922.

There is no evidence that anything was said by the parties upon the subject of abandonment. If there was an abandonment it must be one by operation of law to be implied from the facts showing such intention. I do not think the evidence is sufficient to establish this claim. The lease was always in the possession of the defendants or their assignors. It was never canceled or surrendered in fact. There was no relinquishment of the premises by the corporate defendants. There was no acceptance of abandonment or surrender, and no resumption of possession by any act of the lessor-plaintiff. These are the requisite elements of abandonment to constitute surrender by operation of law. (35 C. J. pp. 1089–1091, §§ 274–277; 2 Underhill Landl. & Ten. § 719, p. 1222.)

Plaintiff further contends that failure of defendant companies to commence operations within a prescribed length of time resulted in the automatic abandonment or termination of the lease.

The answer to this claim is there was no time specified for commencing operations. The lease was for one year " and as much longer as the rent for failure to commence operations is paid." It has no definite term or time limit so long as the annual rent was paid.

In the cases cited by plaintiff (*Conkling* v. *Krandusky*, 127 App. Div. 761; *Eaton* v. *Allegany Gas Co.*, 122 N. Y. 416) definite dates for the commencement of operations were specified and definite terms were created by the leases. In each case, operations were commenced and followed by failure to find oil or gas; and physical abandonments were attempted or actually made by the lessees, and actual or attempted acceptances of such abandonments were made by the lessors by resumption of possession of the property. For these reasons, they are clearly distinguishable from the case at bar.

The cases cited from other jurisdictions deal with the termination of leases by abandonment by reason of lessee's failure to develop the property within a time specified. These decisions were in States where proven territory exists and where the courts imply a covenant to proceed with due diligence and permit the lessor to terminate the lease for breach of such covenant. This strict rule does not apply to so-called "wild cat leases" such as in the instant case. (*Lone Star Gas Co.* v. *McCullough*, 220 S. W. 1114.)

No demand was made that the lessees proceed earlier with the development. Rent was accepted and the lessees had the right to assume the lessors were satisfied to receive the rentals in lieu of development. (*Monarch Oil & Gas Co.* v. *Richardson*, 124 Ky. 602, 604; 40 C. J. 1084.) Notice and demand for compliance with an implied covenant to develop is necessary before equity will grant a forfeiture. (*Papoose Oil Co.* v. *Rainey*, 89 Okla. 110; 40 C. J. 1082.)

The lease involved here is what is called an "Or" lease as distinguished from an "Unless" lease. Under the former the lessee agrees to develop (in the instant case, a well) or pay a stipulated rental. Under such a lease failure to develop does not authorize termination. (*Northwestern Oil Co.* v. *Branine*, 71 Okla. 107; *Healdton Oil & Gas Co.* v. *Smith*, 80 id. 242; *Jennings-Heywood Oil Synd.* v. *Houssiere-La Treille Co.*, 119 La. Ann. 793; 40 C. J. § 689.)

The omission to pay rent after 1926 cannot support a finding of abandonment or surrender. There is no forfeiture clause in the lease nor does it contain a condition subsequent or limitations, but only covenants. Failure to pay rent does not terminate the lease. (40 C. J. § 689; *Healdton Oil & Gas Co.* v. *Smith, supra*; *Jennings-Heywood Oil Synd.* v. *Houssiere-La Treille Co., supra*.)

I am of the opinion that the lease of 1922 is in full force and effect and binding upon the plaintiff.

As to the plaintiff's claim of ownership — it is conceded he has the record title to an undivided one-half interest in the farm. He testified he did not sell his interest to his brother and never gave a deed to the property. On examination before trial, he testified he did not know whether he had signed a deed to his brother or not. The defendant Ellen Ball, called by plaintiff, testified her husband had not purchased plaintiff's interest in the farm but that she was not present at the time of the transaction and had never heard her husband or plaintiff say that a deed had or had not been made or delivered.

After leaving the farm, plaintiff exercised no control over it, received no rent or income from it. paid no taxes, and made no contribution to the operating expenses. He made no claim for

rent under the oil leases of 1922 and 1926. Leason was in exclusive possession and represented he was the owner to the defendant's agent when the lease of 1926 was made.

Plaintiff received $2,000 cash payment for whatever interest he sold, and he took six head of cattle with him from the Ball farm to the farm he purchased. In the spring of 1925, plaintiff stated to Dr. Hills, a veterinary surgeon, that his brother Leason had bought out " his share of the farm." This conversation took place when plaintiff employed the witness to inspect his cattle before taking them into Cattaraugus county. He told Clarence Campbell, supervisor of Perrysburg, that " he had sold out to his brother, and had bought this farm down here, and wanted to get his cattle tested to move down there." To Lewis Hall, from whom he purchased the Hall farm, he said he had " sold his interest in his Nashville farm to his brother for $2,000." To Abbott T. Skinner, hardware merchant at Perrysburg, he said " he had sold the farm at Nashville and he had bought the Hall farm." He made substantially the same statement to Herman Retzel, to whom he sold the Hall farm in 1927. Lester Park, an automobile and tractor dealer at Gowanda, testified that plaintiff said " he had turned in his interest on the Ball farm at Nashville toward the Hall farm." These witnesses were disinterested. Upon the trial plaintiff did not deny any of these statements.

The assessment rolls for the town of Hanover show the premises were assessed to Leason J. Ball beginning in 1925 to 1929 and to Ball brothers from 1920 to 1925. This evidence has little probative force in and of itself but in view of the fact that transfers of farms in rural communities are matters of common and public knowledge, it is a circumstance of some interest. The fair value of the farm when purchased by Leason and plaintiff in 1920 was $5,000. The purchase price was $5,937 represented by a mortgage for that amount given to the father, Louis E. Ball, one of the defendants herein, from whom they purchased the farm. The value of the farm in 1925 when plaintiff left it was $5,000. Therefore, the equity in the farm, over and above the mortgage, was little or nothing.

I am of opinion, upon all of the evidence, the defendant companies have sustained their claim that plaintiff in 1925, orally sold his interest in the farm to Leason, who immediately took exclusive possession and has since, through himself and heirs, exercised exclusive dominion and control over the same. By virtue of this transaction, Leason became the equitable owner of plaintiff's interest in the farm.

A court of equity will enforce an oral agreement for the sale of

an interest in real property where the agreement has been partially performed, thereby becoming an executed agreement. (*Hay* v. *Knauth*, 169 N. Y. 298; *Young* v. *Overbaugh*, 145 id. 158; *Canda* v. *Totten*, 157 id. 281; *McKinley* v. *Hessen*, 202 id. 24; *Messiah Home for Children* v. *Rogers*, 212 id. 315; *Woolley* v. *Stewart*, 222 id. 347; *City of New York* v. *N. Y. & S. B. Ferry*, 231 id. 18.)

The plaintiff would be estopped from asserting ownership as against Leason or his heirs. He is also estopped from asserting such claim against the defendant companies who were and are in privity with Leason and entitled to the benefits of estoppel. (21 C. J. pp. 1179, 1180; *Masten* v. *Olcott*, 101 N. Y. 152; *Pond* v. *Pond*, 79 Vt. 352; *Campbell* v. *Goodall*, 8 Ill. App. 266; *Krathwohl* v. *Dawson*, 140 Ind. 1.)

A person in privity is entitled to the benefits of estoppel where the privity is created after the events out of which the estoppel arose. (*Masten* v. *Olcott, supra; Campbell* v. *Hall*, 16 N. Y. 575; *Matter of Farley* v. *Wurz*, 217 id. 105; *Mitchell* v. *Einstein*, 105 App. Div. 413.) In the instant case the defendant companies leased the farm from Leason after he had purchased it from the plaintiff.

A purchaser of land from another who could invoke estoppel against a claimant thereto may rely upon the estoppel. (*Eareckson* v. *Rogers*, 112 Md. 160; *Pierce* v. *Texas Rice Dev. Co.*, 52 Tex. Civ. App. 205; *Hilton* v. *Sloan*, 37 Utah, 359.)

For the reasons stated, I find the defendant companies are entitled to judgment dismissing the plaintiff's complaint, with costs.

Submit decision.