### J. A. THOMAS AND WIFE v. A. GROESBECK ET AL.

1. The failure to record, and subsequent destruction by the father of a deed made and delivered by him to his infant daughter, do not divest her of title in the land conveyed by such deed ; nor does a subsequent deed by her father to a vendee, with notice, pass any title against the minor.
2. Although such deed may not have been made as part of a partition between the father and heirs of his deceased wife of the community property, still the deed from the father conveyed the half-interest, which interest, and the distributive share of the minor in her mother's half, should have been recovered in the suit against the subsequent vendee.
3. Nor will the minor be concluded by the fact that her father invested part of the money received from the sale in her name and for her benefit.
4. In the absence of evidence showing that the subsequent vendees were imposed on, deceived, or misled by the acts of the minor, or were induced by her to purchase the land or pay therefor, there can be no ground of estoppel against the minor claiming against such subsequent vendees.
5. A suit brought by such minor upon her marriage, and subsequent to her action for the land, for the recovery of the part of the money obtained by her father from the sale sought to be set aside, and loaned out in her name, is not an act to which the law will attach as an effect the ratification of or an estoppel against denying the validity of the subsequent conveyance by her father.
6. Facts held not to constitute an equitable estoppel.

APPEAL from Navarro. Tried below before the Hon. Francis B. Wood.

This is an action of trespass to try title, tried at the November term of the court, 1872.

A jury was waived, and a statement of facts, of which the following is the substance, was submitted to the court:

In June, 1870, T. J. Jackson, of Navarro county, after giving property to the elder children, divided the homestead tract between his two youngest daughters ; to Mrs. Fewell, the eldest, giving twenty-six acres, and to the younger, Martha, then an infant and unmarried (the plaintiff here), he gave forty acres, upon which was the dwelling house and nearly all the improvements, executing deeds for said tracts.

Shortly after this conveyance, the citizens of Corsicana contracted with the H. & T. C. R. W. Co. to give them six hundred and forty acres as a bonus to induce them to locate a depot at that place.   The Jackson land was lying within the tract desired by the company, and a committee, Messrs. Beaton and Kerr, defendants in the suit, who were appointed by the citizens of Corsicana to buy up the land, proposed to Jackson to purchase the land from him.   On being notified of Jackson's conveyance to his two daughters — one married, the other a minor — they purchased the married daughters's land for $1500 gold. They offered Jackson the sum of $1000 for Martha's (the minor) land, but she was unwilling to accept such a sum—land all around selling at a higher rate.   Jackson thereupon ignoring his deed to Martha, which he had neglected to place upon record, at the request of the committee made a title in his own name direct to "Groesbeck and others," who having examined into the case received Jackson's title, and to strengthen it—the property having originally been community—took title from all the living heirs, except Martha, from whom or in whose name they obtained no title whatsoever, and against whom they seek to hold.

Jackson then received from the committee $1000, of which $600 was loaned to J. R. Loughridge and wife in his daughter's (Martha Jackson, now Thomas) name.

The committee, Beaton and Kerr, after Jackson made the conveyance to Groesbeck, took possession of Martha Jackson's land and sold all the out-buildings, fence, etc., for $300 gold, which they appropriated, and then turned over the land to defendants, Groesbeck and others.

In October, 1871, Martha, still a minor, married J. A. Thomas, one of the plaintiffs, and immediately instituted this suit, praying for a writ of possession of her place, and asking for a rescission of the contract made by her

father, and for an account to be stated between the committee and herself.

· The committee who sold the improvements came in and disclaimed all interest in the suit. The following month, after this suit was instituted, the plaintiffs brought suit against Loughridge for the money loaned in her name. Loughridge pleaded that the suit against Groesbeck, etc., for the land was an election, etc., but afterwards paid a portion of the money.

Upon these facts the court gave judgment for the defendants, and Thomas and wife appealed.

*E. A. Simpkins*, for appellants.

*Peeler & Fisher*, also for appellants, cited 25 Texas Sup., 325, Van Hook v. Simmons ; 20 Texas, 47, Galbreath v. Templeton ; 32 Penn., 340; 36 Barb., 655; 1 Am. Lead. Cases, 2d Ed., 254; 10 Ohio, 34, 43, Lawrence v. McArter; 4 Litt., 17, 21, Pyle v. Cravens ; Lead. Cases in Equity, 400, 401, 419; 2 Smith's Lead. Cases, 463, 643; 11 Humph., 433, Morris v. Moore; 14 Cal., 279; 37 Penn., 379; 2 Strobhart, 48, Thompson v. Thompson ; 15 N. Y., 365, Hawes v. Sackett ; Adams' Equity, 216 ; 28 Texas, 415; Burleson v. Burleson ; 19 Ala., 481; 3 Hill, 222; 8 Barb., 102; 1 Seld., 394; 9 Gill, 384; 25 Ind., 459, Hill v. Epley ; Herman on Estoppel, 336, 238, 239, 424; 30 Texas, 762, Young v. Van Bentheuysen ; 31 Texas, 690, Welch v. Wright ; 2 Gray, 169; 18 N. Y., 552, Morris v. Rexford ; 11 Wend., 467; 24 Ind., 385; 13 Johns., 121; 1 Wend., 404; 3 Johns. Ch., 416; 7 Ind., 454; 1 Shepley, 364; 1 Com., 496; 1 Seld. N. Y., 402; 38 Ill., 382; 17 Texas, 318, Love v. Barber ; 28 Texas, 713, Scoby v. Sweatt ; 29 Texas, 54, Page v. Arnim ; 38 Cal., 300; 31 Ind., 1.

*James H. Bell*, for appellees.

*Peeler & Fisher*, for appellants, in supplemental brief

cited 4 J. J. Mon., 573, Hughes v. Eston; 12 Johns., 535, Verplanck v. Sterry; 1 Johns. Ch., 240, Souverbye v. Arden.

MOORE, ASSOCIATE JUSTICE.—The failure to record, and subsequent destruction of the deed of Jackson to appellant Martha V. Thomas, if there had been a legal delivery of it, which we must infer from the language of the statement of facts, certainly neither divested her of the title or interest in the land conveyed to and vested in her by the deed nor authorized its subsequent sale by Jackson to the appellees, who are admitted to have been fully informed, before the payment of the purchase money and the delivery of the deed under which they claim, of the prior conveyance by Jackson to the appellant, Mrs. Thomas.

It seems probable from the record that the deed to appellant, Mrs. Thomas, was made by her father in connection with deeds executed to his other children for the purpose of a partition or settlement of their community rights as heirs of their deceased mother, and that the division or settlement thus made was acquiesced in and satisfactory to all parties interested in the land; and consequently, after this settlement and the execution of the deed to her by her father in pursuance thereof, Mrs. Thomas was the sole and exclusive owner of the land in controversy. But even if it is conceded that the deed from Jackson is inoperative in respect to the interest of his other children in the cammunity estate of his deceased wife, it could not affect the result of this case on the present appeal. For, if the deed from her father had no greater effect, it certainly conveyed to Mrs. Thomas his community interest in the land; and if the appellees acquired the interest of the other heirs in the mother's estate, unless by some subsequent act she has parted with her interest, or has estopped herself from demanding it,

she should have recovered the one-half which still would have passed to her by the deed of her father, and her proportional part of the other half as an heir of her deceased mother.

It is scarcely necessary to say that the mere fact that her father invested a portion of the money received by him in consideration of his sale and conveyance to appellees of the land, which, as they well knew, he had previously conveyed to his daughter, then a minor, and for which they only got an apparent chain of title by the withholding from record and unwarranted destruction of his previous deed, cannot bar or conclude appellants from a recovery. Obviously, then, the judgment must be reversed, unless appellants, by bringing suit for that portion of the money received by Jackson in consideration of his conveyance to appellees, which he invested for his daughter's benefit, and in her name, have ratified the conveyance of her land to appellees, or estopped her from denying the validity of the deed or that she had ratified it.

As appellees were fully informed of all the facts and circumstances in connection with the title to the land previous to the payment for it and the conveyance to them by Jackson, and as none of the parties connected with the transaction have been imposed upon, deceived, or misled in any way by the acts or declarations of Mrs. Thomas, or induced thereby to purchase or pay for the land, there is not the slightest ground to hold that she is estopped from denying the original validity of appellees' deed. And as the present suit was brought two days before that for the recovery of the money, which is the sole ground upon which either an estoppel or ratification is claimed, and appellees were thereby informed appellants not only did not ratify the sale to them, but controverted its validity and sought a recovery of the land on this ground, though proffering at the same time to account for so much of the money paid Jackson as they had re-

ceived, it certainly cannot be claimed that there was any intent or purpose on the part of appellants to ratify a transaction which was the sole occasion of their suit, and against which they were seeking the protection and aid of the court. And there is as little reason to suppose appellants had, or appellees themselves believed that they intended, by the suit brought two days afterwards for money which, in view of all the facts, they alone had the legal right to sue for, and which, as alleged in the petition in this case, they were, if collected, willing to account, to ratify the conveyance to appellees, and thereby preclude a recovery in the suit just brought, waive the claim for the large damages charged to have been done to the premises, and accept $600 for property which had been recently sold for $1000.

If there was, by this second suit for the money or the receipt of that part of it which appears to have been paid since its commencement, a ratification of the deed to appellees, it is not by reason of the intent or purpose of the parties to ratify and confirm an act done without authority, which is usually and ordinarily essential to its validity, but it is by reason of a conclusion of law from the act done, irrespective of its object or purpose, which holds it to operate as a ratification. In other words, parties by their acts, irrespective of the intent and purpose with which they are done, will be held to have estopped themselves from denying that they have ratified the doing of the matter or thing by which they were not otherwise bound. Does the law impute such a conclusion to the acts of appellants, relied upon in this case? We think, unquestionably, it does not. It is a well recognized and essential element of an equitable estoppel that the act or admission relied upon to have this effect must appear to have had a direct or immediate influence upon the party asserting it. There must be wrong on the one side, and injury suffered or to be apprehended from such wrong by

the other. If no injury has been suffered or can be apprehended from the act in question by the party setting it up, he cannot rely upon it as an estoppel, whatever may be its effect upon others, or whatever may be said of it in morals. The receipt of the money in question by appellants has been the inducement or occasion of no act or thing done by appellees, nor does it appear that they have suffered any injury thereby, or have reason to apprehend any in future.

When appellees received their deed they were advised of the invalidity of their title, and took, as their security, the covenant of warranty of their grantor, and if he is responsible and can make it good, as to which the record is silent, they are not injured by his settlement upon or gift to his daughter of a portion of the money paid him. But if their grantor is insolvent, and they have an equitable right, on the failure of their title, to the money paid for the land superior to that of appellants, it must be admitted, as the legal title of the note on which suit is brought against Loughridge is in them, its mere collection, if they are willing to an equitable account—which, of course, the court may require—will not injure appellees, and should not be held to give them title to land for which they have no valid or legal conveyance. We deem it, however, proper to say, if appellees have in equity any claim or demand upon the money paid by the committee on behalf of the citizens of Corsicana, who, in fact, purchased and paid for the land, it is subject to appellants' claim for damages done to the land by these parties, and upon this basis appellants in their petition proffer to account. And that this may be done, as well as to enable the parties to present such other equitable or legal rights of action or defense as they may be entitled to assert, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.