WATTS et al. v. McCLOUD et al. (No. 1278.)

(Court of Civil Appeals of Texas. Amarillo. May 29, 1918. Rehearing Denied June 26, 1918.)

1. LIMITATION OF ACTIONS ⬤∾85(3)—STATUTE —SUSPENSION.

If subsequent grantee from common source, claiming title by adverse possession under five-year statute, was a resident at time deed to him was recorded, the operation of the statute would be suspended during his absence from the state, under Rev. St. 1911, art. 5702, although during such time grantee became a nonresident.

2. LIMITATION OF ACTIONS ⬤∾87(4)—STATUTE —SUSPENSION.

If subsequent grantee from common source, claiming title by adverse possession under five-year statute, was a nonresident at time his deed was recorded, mere visits to the state on business or pleasure would not bring the suspensory statute (R. S. 1911, art. 5702) into operation.

3. LIMITATION OF ACTIONS ⬤∾197(1)—STAT-UTE—SUSPENSION.

In trespass to try title, evidence *held* to warrant jury finding that subsequent grantee from common source was a resident at time of recording his deed, so that his subsequent absence from state would suspend statute of limitations, under Rev. St. 1911, art. 5702.

4. LIMITATION OF ACTIONS ⬤∾87(4)—STATUTE —SUSPENSION.

Rev. St. 1911, art. 5702, suspending statute of limitation in case of absence from state, applies to one who at time of accrual of cause of action had a "residence" as distinguished from a "domicile" within the state.

5. EVIDENCE ⬤∾271(21)—DECLARATIONS AS TO RESIDENCE—AFFIDAVIT.

In trespass to try title, the principal issue being whether deceased grantee was at time of accrual of cause of action a resident, so that his absence from the state would, under Rev. St. 1911, art. 5702, suspend statute of limitations, a statement of said grantee in an affidavit that his postoffice address was a named place within the state was admissible as a circumstance tending to establish residence.

6. TRIAL ⬤∾194(2) — ERRONEOUS REQUESTS — REFUSAL.

Requested instruction to effect that declarations made by a party with reference to making testimony in his favor or subserving his interests should be rejected, *held* a comment on weight of evidence and properly refused.

7. JUDGMENT ⬤∾253(1) — SUFFICIENCY OF PLEADING TO SUPPORT.

In trespass to try title, petition which expressly alleged value of use of premises to be $250 per annum, and asked for judgment for damages, rents, and costs of suit, was sufficient to support judgment for $381 for use of premises for two years prior to beginning of suit.

8. PLEADING ⬤∾384—SET-OFF—TRESPASS TO TRY TITLE.

In trespass to try title, where there was no pleading on the part of defendants of the payment of specific taxes and no prayer for any set-off, the court did not err in refusing to set off against the damages awarded plaintiffs' taxes paid by defendants, in view of Rev. St. 1911, art. 1907, as to necessary steps to entitle defendant to prove set-off.

9. TRESPASS TO TRY TITLE ⬤∾41(1) — BONA FIDE PURCHASE—EVIDENCE.

In trespass to try title, facts *held* not to warrant submission of issue whether deed from common source to a son whose heirs are plaintiffs was a bona fide sale and purchase or a conveyance in trust to subserve the convenience of the parties.

10. DEEDS ⬤∾194(5)—DELIVERY—EVIDENCE.

Recording of a deed is presumptive evidence of its delivery.

11. FRAUDULENT CONVEYANCES ⬤∾210 — RIGHT OF SUBSEQUENT GRANTEE.

Although conveyance was for the purpose of defrauding creditors, it would be good as to a subsequent grantee having constructive notice thereof.

12. TRUSTS ⬤∾44(3) — PAROL TRUST — EVIDENCE.

A parol trust cannot be ingrafted upon a legal title except by clear and satisfactory evidence.

13. ESTOPPEL ⬤∾119—QUESTION FOR JURY.

In trespass to try title, evidence *held* not to warrant submission of issue whether plaintiffs were estopped by their predecessors' acquiescence in or consent to a subsequent conveyance by his grantor to another.

Appeal from District Court, Garza County; W. R. Spencer, Judge.

Trespass to try title by James M. McCloud and others against Mary Parkes Watts and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Beall & Douthit, of Sweetwater, and Thompson, Knight, Baker & Harris, of Dallas, for appellants. Bean & Klett, of Lubbock, for appellees.

BOYCE, J. This suit in trespass to try title was brought by appellees James McCloud and others, heirs of James W. McCloud and his wife, deceased, against appellants, Mary Parkes Watts and Emma Parkes Watts, surviving wife and daughter, respectively, of W. W. Watts, to recover a section of land in Garza county. Defendants, in addition to a plea of not guilty, pleaded the 5 and 10 years statute of limitations. The plaintiffs, in reply to the plea of limitations, alleged that W. W. Watts, the husband and father of appellants, and under the deed to whom they claim, was at the time of the accrual of plaintiffs' cause of action a resident of Texas, and thereafter was without the limits of the state from time to time, and limitations were suspended so that, counting out such periods of suspension, the said W. W. Watts and the defendants had not been in adverse possession of said land for a sufficient length of time to support their plea of limitations. The trial resulted in judgment for plaintiffs.

James McCloud is the common source of title. He conveyed the property to his son James W. McCloud by deed dated November 5, 1891, and recorded in January, 1892. The appellees are the heirs of the said James W. McCloud and his wife, who is also dead. By deed dated August 2, 1898, James McCloud conveyed the land to W. W. Watts. This deed was recorded in Garza county on February 26, 1903. W. W. Watts at the time of conveyance to him entered possession, and he and appellees have been in possession,

---

paying taxes thereon, up to the time of the institution of this suit.

The principal question in the case is as to whether W. W. Watts was, at the time of or subsequent to the accrual of plaintiff's cause of action, such a resident of Texas as that the provisions of article 5702, R. S., would apply so as to suspend the running of the statute during his absences from the state, it being undisputed that if said article is to apply the plea of limitations was not good. The five-year statute of limitations would begin to run upon the recording of the deed to W. W. Watts in Garza county in February, 1903.

[1] If W. W. Watts was a resident of Texas at that time, absences from the state thereafter would, during the continuance thereof, suspend the statute, although during such time he became a nonresident. R. S. 5702; Ayres v. Henderson, 9 Tex. 539; Bemis v. Ward, 37 Tex. Civ. App. 481, 84 S. W. 292; Dignowity v. Sullivan, 49 Tex. Civ. App. 582, 109 S. W. 428; Huff v. Crawford, 88 Tex. 368, 30 S. W. 546, 31 S. W. 614, 53 Am. St. Rep. 763.

[2] On the other hand, if he were a nonresident of Texas, mere visits to the state on business or pleasure would not be sufficient to bring the suspensory statute into operation. Wilson v. Daggett, 88 Tex. 375, 31 S. W. 618, 53 Am. St. Rep. 766.

[3] By various assignments appellants assert that the evidence is insufficient to show that W. W. Watts was a resident of Texas during the year 1903; they also assail the method of the submission of the issue of residence to the jury. The evidence shows that W. W. Watts came to Texas soon after the Civil War. He acquired a large plantation in Robertson county and lived with his family on it. In 1883 he also acquired a large ranch in Garza county. Until some time in 1884 or 1885 unquestionably both his domicile and residence were in Texas. In 1884 or 1885 he built an expensive residence in Richmond, Ky., which he occupied with his family until his death, but the principal part of his property and business interests continued to be located in Texas. He farmed the plantation, in Robertson county until 1899, when he leased it out. He also ran the ranch in Garza county until he leased it in June, 1903. His wife and daughter, appellants, both testify that until he leased out these properties he spent the greater part of each year in Texas; that during this time he claimed Texas as his legal residence and voted here. His wife and daughter accompanied him to Texas at times, but spent very little of their time here, remaining for the most part in the Kentucky home. Even after both properties were leased out he made several trips each year to Texas, but after the leasing of the plantation in 1899 the time spent in Texas began to lessen, and this was still further shortened after the leasing of the ranch in 1903. The testimony is somewhat conflicting as to the amount of time spent in Texas about the year 1903, and as to whether at that time he was still voting in Texas; but, using the word "residence" as it is distinguished in meaning from "domicile," the evidence is sufficient to warrant the finding of the jury made in response to a special issue, that the said "W. W. Watts was a resident of Texas from the time he began ranching in Texas, in 1883, until he leased the ranch to Littlefield, in (June), 1903." So that we overrule those assignments, which complain of the sufficiency of the evidence to support this finding.

[4] Appellants' assignments on the method of the submission of the issue of residence are based principally on the contention, in effect, that "residence," as the term is used in those decisions, which hold that article 5702 does not apply to absences from the state of "nonresidents," is used in the meaning of "domicile." In determining whether this is true it is, in the first place, to be observed that article 5702 does not itself use the word "resident" or "nonresident," but simply provides that:

"If any person against whom there shall be cause of action shall be without the limits of this state at the time of the accruing of such action or at any time during which the same might have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the state, and the time of such person's absence shall not be accounted or taken as a part of the time limited by any of the provisions of this title."

The Supreme Court in an early day held that, on account of the use of the word "return," the statute did not apply to one who was not and never had been in the state at the time of the accrual of the cause of action, because the "return" of such a person to the state was a physical impossibility. Snoddy v. Cage, 5 Tex. 106. So the courts have come to announce the proposition generally that the statute does not apply to persons who were nonresidents of the state at the time of the accrual of the cause of action, and the statute was held to apply to real as well as personal actions. Huff v. Crawford, 88 Tex. 368, 30 S. W. 546, 31 S. W. 614, 53 Am. St. Rep. 763; Wilson v. Daggett, 88 Tex. 375, 31 S. W. 618, 53 Am. St. Rep. 766. This history of the development of the law convinces us that the statute applies to one who at the time of the accrual of the cause of action had a residence, as distinguished from a domicile, in Texas, although he might have a domicile in another state. It can properly be said of such person that he may "return" after an "absence." The person having such a residence, though his domicile be elsewhere, is subject to the jurisdiction of our courts; he comes within the provisions of our venue statute; is not a

"nonresident," as the term is therein used, and may claim the privilege of being sued in the county of his "residence." Taylor v. Wilson, 99 Tex. 651, 93 S. W. 109. The court's charge drew the distinction between "domicile" and "residence," giving the definitions thereof as quoted and adopted by the Supreme Court in P. & N. T. Ry. Co. v. Thompson, 106 Tex. 456, 167 S. W. 803, col. 1. The jury were also informed that "a person may have a domicile in one state and residence in another. A person can have but one domicile, but may have more than one residence." The statement and definitions thus made in the charge are fully supported by the decisions of the Supreme Court. P. & N. T. Ry. Co. v. Thompson, supra; Pearson v. West, 97 Tex. 243, 77 S. W. 944; Taylor v. Wilson, supra. And if this conception of residence is properly applicable to this kind of case, there was no error in the charge. The charge, in connection with the special charges that were given, was sufficiently full, and we find no error in those assignments which complain of the charge given and the refusal of charges requested on this issue. We do not think the form of the submission of the issue was leading, as complained of.

. This general discussion disposes of the first, second, fourth, sixth, seventh, eighth, tenth, and twelfth assignments.

[5] We do not think the admission of the statement in an affidavit made by W. W. Watts on October 10, 1898, that his post office address was Mumford, Robertson county, Tex., was error. The statement made at this time was admissible as a circumstance tending to establish the fact of residence of W. W. Watts in Texas at such time. Robertson v. Ephraim, 18 Tex. 124; Davis v. State, 75 Tex. 420, 12 S. W. 960.

[6] In connection with the admission of this testimony the appellants requested an instruction to the effect that declarations made by a party with reference to making testimony in his favor or subserving his interests should be rejected, and assigned error on the refusal of such charge. In this connection there is a suggestion that under the law only a resident of Texas could lease convicts, and, since it was shown that W. W. Watts was farming his Robertson county plantation by leased convict labor, it might be inferred that this declaration was a self-serving one and not a true statement of the facts. We think the requested charge would have been on the weight of the evidence, and that it was properly refused. H. & T. C. Ry. Co. v. Runnels, 92 Tex. 305, 47 S. W. 972; Read v. Allen, 63 Tex. 158; Castleman v. Sherry, 42 Tex. 59. This disposes of the fifth and ninth assignments.

[7] The third assignment complains of the action of the court in rendering judgment for plaintiffs for damage for the sum of $381 as compensation for the use of said premises for a period of time beginning two years prior to the institution of the suit and continuing to the time of the trial, it being claimed that the pleadings were insufficient to support such recovery; the evidence was insufficient to warrant the finding; no issue was submitted to the jury; no demand was made for such rents, and no offset allowed for the amount of taxes paid by defendants on said land. The plaintiffs in their petition expressly allege the value of the use of said premises to be $250 per annum, and asked for judgment for "damages, rents, and costs of suit." We think this was sufficient. We do not think a demand for the payment of said rents, other than that made in the petition, was necessary. The undisputed evidence of defendants' own witnesses and the admissions upon the trial fixed the value of the use of the premises, and, there being no request for the submission of the issue to the jury, we think this evidence was sufficient to warrant the judgment of the court.

[8] There was no pleading on the part of the defendants of the payment of specific amounts of taxes, and no prayer for any offset, and it was not error for the court, under these circumstances, to refuse to offset the damages by taxes paid by defendants. Article 1907, R. S.; Lipincott v. Taylor, 135 S. W. 1070. We overrule, therefore, appellants' third assignment.

[9] By the eleventh and thirteenth assignments it is urged that the facts are sufficient to require the submission of issues as to whether the deed from James McCloud to James W. McCloud was "the result of a bona fide sale and purchase between the parties, or was it done to convey the land in trust, or for some other purpose to subserve the convenience of the parties to the transaction"; or whether the deed by James McCloud and wife to W. W. Watts was acquiesced in or consented to by James W. McCloud or subsequently ratified by him? In connection with the consideration of these two assignments, we make the following additional statement: After the execution of the deed to James W. McCloud by James McCloud, in 1891, James McCloud continued to pay the taxes on the land until it was conveyed by him to W. W. Watts, and the said W. W. Watts and the appellees thereafter paid the taxes until the time of the filing of this suit. James W. McCloud died March 8, 1903; his wife died June 24, 1909; James McCloud died in February, 1904, and his wife died in April, 1910. The parties lived during a great part of the time in the same place and the relations between them were cordial and affectionate. The Texas property was not listed as belonging to the estate of any of these persons upon their decease, and no claim was made to the land until after the year 1911, when an abstracter of Garza county, having discovered a discrepancy in the Watts title, made some inquiries of the McClouds in reference to the matter. The ap-

pellees appear to have had some difficulty in securing the deed from their guardian, in whose possession it was, and took no steps to recover the land until some time in the year 1915. There is a mere suggestion that James McCloud was in financial difficulties sometime prior to the date of the deed of James W. McCloud, and that the land may have been conveyed to him while in this condition, and with a view of obtaining a settlement from his creditors.

[10] The recording of the deed is presumptive evidence of its delivery. Williams v. Neill, 152 S. W. 693; Belgarde v. Carter, 146 S. W. 964. The subsequent possession of the deed by the guardian of the children of James W. McCloud still further confirms this presumption, and, as there is no evidence to the contrary, the record does not, therefore, raise an issue as to the execution and delivery of the deed. The deed was in terms a warranty deed, reciting a consideration, and conveyed the title to James W. McCloud. This title could only be divested by some mode of conveyance recognized by law. Van Hook v. Simmons, 25 Tex. Supp. 324, 78 Am. Dec. 573.

[11] Even if the purpose of the deed was to defraud the creditors, the conveyance would be good as to W. W. Watts, since he had constructive notice of the deed. Monday v. Vance, 51 S. W. 346; Sikes v. First State Bank, 197 S. W. 227.

[12] A parol trust cannot be ingrafted upon a legal title except by clear and satisfactory evidence. Certainly there is nothing in the record that would satisfy this requirement.

[13] Neither do we think the evidence sufficient to raise an issue of estoppel or ratification. It does not appear that James W. McCloud knew anything of the deed to W. W. Watts, nor that he did anything that in any way influenced said Watts to buy the land. Thomas v. Groesbeck, 40 Tex. 530; Pierce v. Texas Rice Development Co., 52 Tex. Civ. App. 205, 114 S. W. 857.

We have found no assignments which present reversible error, and the judgment will be affirmed.

HUFF, C. J., not sitting, being absent in Austin, sitting with Committee of Judges passing on writs of error for the Supreme Court.