IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 19, 2020 Session

**KNOXVILLE COMMUNITY DEVELOPMENT CORPORATION
v. ORCHARD ENTERTAINMENT GROUP, LLC, ET AL.[1]**

**Appeal from the Circuit Court for Knox County
No. 2-27-19   William T. Ailor, Judge**

_____

**No. E2019-01831-COA-R3-CV**

_____

This appeal involves the condemnation of a property within a redevelopment area in Knoxville, Tennessee, pursuant to Tennessee Code Annotated section 13-20-202. The plaintiff obtained entry of an order granting it title to the property based upon assertion of eminent domain. The defendant claims that it did not receive due notice of hearings and that the plaintiff failed to follow the procedures set forth in the relevant redevelopment plan prior to initiating the taking. Upon the trial court finding that the plaintiff acted properly, the defendant timely filed a notice of appeal. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Benjamin C. Mullins and Matthew A. Grossman, Knoxville, Tennessee, and Richard E. Graves, Franklin, Tennessee, for the appellant, Orchard Entertainment Group, LLC.

Michael S. Kelly and Rob Quillin, Knoxville, Tennessee, for the appellee, Knoxville Community Development Corporation.

**OPINION**

**I. BACKGROUND**

---

[1]The other listed defendants did not participate in this appeal.

On March 27, 2007, the City of Knoxville (the "City"), by way of resolution number R-189-07 of Knoxville's City Council, adopted the Downtown North/I-275 Corridor Redevelopment & Urban Renewal Plan (the "Plan" or "Redevelopment Plan"). The goal of the Plan is to eliminate the conditions of blight and inappropriate land uses existing within the urban core of the City (the "Redevelopment Area").

The Redevelopment Plan provides for various procedures that must precede any acquisition of property by the plaintiff, Knoxville's Community Development Corporation ("KCDC"). KCDC is a housing authority established by the City and organized under the Housing Authorities Law codified at Tennessee Code Annotated section 13-20-101, *et seq*. Pursuant to the statutory provisions, a housing authority such as KCDC is authorized to acquire property within a redevelopment area that is blighted, contributes to blight, or which may be acquired because of the condition of the title or other identified conditions. Tenn. Code Ann. § 13-20-102. This may be accomplished by the use of eminent domain. Tenn. Code Ann. § 13-20-104(a)(17).

Section V of City's Redevelopment Plan provides that "[i]f KCDC identifies a specific property as blighted," then "KCDC will request the existing owner of a blighted property to submit to KCDC a redevelopment proposal[.]" The Plan defines "blight" as follows:

> "Blighted areas" are areas with buildings or improvements, which by reason of dilapidation, obsolescence, overcrowding, lack of ventilation, light and sanitary facilities, deleterious land use, or any combination of these or other factors, are detrimental to the safety, health, morals or welfare of the community.

If KCDC determines that it should acquire a property, the Redevelopment Plan identifies the necessary steps: issuance of a notice of intent to acquire, appraisal of the value of the property, negotiation with the owner, and acceptance of information from the owner regarding his/her valuation. The Plan provides that, prior to filing an action to condemn property, KCDC will attempt to convince the owner to accept the fair market value of the property. The Plan states:

> Before initiating a condemnation proceeding, KCDC shall make a diligent, conscientious effort to induce the owner to accept the established fair market value for their property. A final offer to acquire the property shall be made in writing to the owner or their representative, and reasonable time allowed for acceptance.

According to KCDC, it had identified the property at issue as a concern when it was

under the common ownership of Ira Scott Brady and Robin Brady and before Orchard Entertainment Group, LLC ("OEG") acquired it. By way of a deed dated October 24, 2012, OEG purchased from the Bradys 750 and 760 Stone Street (the "Stone Street property" or "Property"), near the intersection of Central and Broadway, for $234,100. This deed also appeared to convey rights to a neighboring parcel of land located at 625 North Broadway ("625 N. Broadway"). The subject properties comprised the site of the former Sanitary Laundry.[2]

In 2014, the City received the results of environmental assessments that revealed the former laundry property contained petroleum hydrocarbons exceeding Tennessee Department of Environment and Conservation ("TDEC") cleanup criteria as well as concentrations of arsenic, lead, benzene, naphthalene, and other hazardous compounds in the soil and groundwater. Testing indicated some chemical vapors were three times above the recommended levels for industrial use. Additionally, significant levels of tetrachloroethene,[3] a known carcinogen, were noted. The property was designated a federal Superfund site.[4]

In February 2014, the City conducted a tax sale of the 625 N. Broadway property and was the record purchaser of the property. 625 N. Broadway has a sizeable vacant storefront. At the time of the purchase, it was years behind on property taxes and in dilapidated condition with significant structural problems.[5]

KCDC subsequently issued a request for proposals to develop the 625 N. Broadway property. However, only one developer submitted a proposal, which did not make economic sense and was rejected. In the view of KCDC, the lack of available parking for 625 N. Broadway and OEG's property prevents a proper development of 625 N. Broadway.

OEG's sole member, Caleb Boyers, designed the Bar Marley restaurant on the Stone Street property to authentically emulate the appearance of a Caribbean restaurant. Prior to Bar Marley's opening, OEG underwent a construction process to get approvals from City's Plans Department. A Certificate of Occupancy was awarded in October 2015, which certified Bar Marley's structure at 760 Stone Street "was in compliance with the various ordinances of the City of Knoxville regulating building construction and/or use."

---

[2]Sanitary Laundry was started about 1923. It was one of the City's largest dry-cleaning companies. This location was the main laundry facility. The company closed in 1993.

[3]Fluid used in dry cleaning.

[4]Although the Stone Street property and the 625 N. Broadway property have separate deeds, the structures are physically connected by an external, above-ground piping system wrapped in asbestos.

[5]Testimony reflects the City spent "hundreds of thousands of dollars remediating a roof and remediating environmental conditions on 625 North Broadway."

Several years of various back-and-forth communications ensued between KCDC and OEG, during which KCDC contended the Property was "blighted."[6] KCDC argued that the Property did not comply with applicable property maintenance codes. For example, among other communications, KCDC sent OEG letters dated May 31, 2017, and November 27, 2017, in which KCDC stated that it considered the Property blighted due to various International Property Maintenance Code violations and that OEG was required to submit a redevelopment proposal to remedy the blighting conditions.[7] In a letter dated January 10, 2018, Mr. Boyers discussed with David Cook of KCDC his confusion about KCDC's alleged code infractions, as the Property already passed inspection by City officials during the initial building renovation approval process. Mr. Boyers asserted that the Certificate of Occupancy certified the Bar Marley structure "was in compliance with the various ordinances of the City of Knoxville regulating building construction and/or use." OEG was advised that, if it failed to submit a Redevelopment proposal, KCDC intended to acquire the Property. On April 26, 2018, pursuant to state law and the Redevelopment Plan, an offer was made to Mr. Boyers to purchase the Stone Street property. After negotiations, the final offer by KCDC was $235,000.

If the owner of a blighted property does not submit a redevelopment proposal or fails to redevelop a blighted property in compliance with the terms of a redevelopment proposal, KCDC may acquire the property "subject to the limitations" in the Redevelopment Plan. The Plan contains the following procedure for instituting an eminent domain proceeding:

> * First, "[i]f KCDC determines that it is necessary to acquire any property as provided in [Section V of the Redevelopment Plan], KCDC shall first attempt to negotiate a voluntary sale of the property with the owner(s) thereof."
>
> * Second, "[i]f a negotiated purchase of property is not achieved, KCDC will not exercise its eminent domain authority to acquire any property pursuant to this plan, except as described below, unless such action is approved by KCDC's Board of Commissioners and the City Council of [Knoxville], provided that City Council approval shall only be required if the property owner requests KCDC to submit the issue to City Council within thirty (30) days of when KCDC's Board of Commissioners approves the acquisition by eminent domain."

---

[6]OEG claims that from October 2015 to December 2018, KCDC continued to press OEG to give up the Property.

[7]All these letters were sent to an address on Dandridge Avenue in Knoxville. KCDC later learned that Mr. Boyers resided on Maloney Road, so it sent a letter to the Maloney Road address on December 15, 2017, which included the November 27, 2017 letter as an enclosure.

- 4 -

* Third, "[u]pon receipt of a request from a property owner to submit an acquisition to City Council, KCDC will request that the City Council consider the matter at its next regularly scheduled meeting. City Council's approval may be by resolution adopted in such manner as City Council typically considers resolutions."

Section V provides: "Nothing in this paragraph or elsewhere in this plan shall be construed to limit KCDC's authority to acquire property, including acquisitions by eminent domain if necessary; if the property will be used for public improvements, such as roads, parks or utilities."

On January 22, 2019, KCDC'S Board of Commissioners approved initiation of an eminent domain action for the Property. As a basis for the acquisition, the Board of Commissioners resolved that the Property was blighted, that the condition of the title and other conditions prevented its proper development within the Redevelopment Area, and that its acquisition would help to "remove, prevent, and reduce blight, blighting factors, and the causes of blight on the Property and in the neighborhood of the Property." According to the Board of Commissioners, "acquisition of the Property is necessary to carry out the Redevelopment Plan." However, KCDC did not provide Mr. Boyers and OEG with advance notice that the Board of Commissioners would be meeting on January 22 to consider whether to institute eminent domain. Further, KCDC did not provide notice that its Board of Commissioners approved the condemnation proceeding on January 22, 2019.

The Redevelopment Plan provides, as noted above:

> KCDC will not exercise its eminent domain authority to acquire any property pursuant to this plan . . . unless such action is approved by KCDC's Board of Commissioners and the City Council . . . . **City Council approval shall only be required if the property owner requests KCDC to submit the issue to City Council within thirty (30) days of when KCDC's Board of Commissioners approves the acquisition by eminent domain**.

Instead of allowing Mr. Boyers and OEG 30 days in which to request City Council review and approval, KCDC filed its complaint on January 23, 2019. No mention is made in the complaint of the KCDC Board of Commissioners' January 22 approval of condemnation proceeding.

On February 15, 2019, OEG filed an answer, arguing that KCDC desired to obtain

the Property to assist with anticipated private development and to provide parking spaces for 625 N. Broadway.[8]  KCDC contended that it had not settled on a final use for the Property, but admitted that its long-term idea is to (1) combine the Stone Street property with 625 N. Broadway, so that 625 N. Broadway has adequate parking for private development, and (2) seek private redevelopment proposals for both properties.  KCDC conceded that the lack of parking and the condition of the Stone Street property prevented the development of the Broadway site.[9]  According to KCDC, OEG never asked for City Council review and never asserted that it had been denied due process based upon the lack of opportunity to have the taking decision reviewed by City Council.

A hearing was scheduled for April 5, 2019, "concerning the right of [KCDC] to acquire the Property owned which is the subject of this case." However, an agreed order was entered to continue the matter from April 5 to May 13.  On April 24, OEG's original trial counsel moved to withdraw.  A hearing was held on May 3, 2019, at which time the motion to withdraw was granted and OEG was given until June 3 to secure counsel.  Mr. Boyers was present at the hearing.

The record reveals that the trial court initially ordered a status conference to be held on June 28, 2019, but it then entered an amended order rescheduling "the status conference … set for June 28, 2019" to "June 21, 2019."  On June 21, OEG did not appear and no attorney entered an appearance.  The trial court conducted a hearing, and its order provided in part:[10]

> This cause was originally set for a hearing on Plaintiff's request for possession on April 5, 2019.
>
> * * *
>
> Prior to entry of the Amended Order Allowing Withdrawal of Counsel . . . , Caleb Boyers informed the court's judicial assistant that OEG would be represented by Attorney Joseph J. Levitt, Jr.  The Amended Order Allowing Withdrawal of Counsel . . .  that was mailed by the Clerk to OEG (to Caleb

---

[8]Because 625 N. Broadway does not have available dedicated parking, it is not attractive to private developers.

[9] According to KCDC, the difficulty in assembling parcels for resale as part of a larger development project in an urban renewal plan is a legitimate basis for a taking when there is diverse ownership of the parcels. *See MDHA v. Eaton*, 216 S.W.3d 327, 342 (Tenn. Ct. App. 2007).  Thus, according to KCDC, even if OEG were able to remove all of the blighting conditions, it would still be necessary for KCDC to acquire the Property in conjunction with the efforts to remedy blight on the 625 N. Broadway property.  The Stone Street property is not one that can be redeveloped by itself without affecting the objectives of the Redevelopment Plan as to the adjoining properties.

[10]No transcript of the hearing was prepared.

Boyers' attention) advised that this matter would be heard on June 21, 2019 at 10:30 AM. In addition to serving a copy of the Amended Order Allowing Withdrawal of Counsel . . . on all parties, the Clerk also mailed a separate notice via a postcard to all parties informing them of the June 21, 2019 hearing at 10:30 AM. Furthermore, Caleb Boyers contacted the Court's judicial assistant on several occasions and he was verbally advised that this matter would be going forward on June 21, 2019. Additionally, Plaintiff's Counsel informed the Court that he was contacted by another attorney who was investigating the possibility of representing OEG and that counsel specifically discussed the hearing that was set for June 21, 2019.

Despite the foregoing, when this case was called on June 21, 2019 at 10:30 AM, neither Caleb Boyers nor anyone else on behalf of OEG appeared at the hearing and no lawyer has entered an appearance. . . .

OEG has failed to retain counsel as required by the Amended Order Allowing Withdrawal of Counsel entered June 5, 2019 and failed to appear at the June 21, 2019 hearing. . . . The Court finds that OEG has violated the Amended Order Allowing Withdrawal of Counsel . . . and has not taken the steps necessary to defend against the Plaintiff's request for possession.

At the June 21, 2019 hearing, Plaintiff and the City . . . presented testimony and evidence through the City['s] Fire Marshal, Donald Partin, through the City['s] Manager of Neighborhood Codes Inspection, Robert Moyers, and through photographs and exhibits that were entered into the record demonstrating that the property is dilapidated, is vacant and has not been actively used as an operating restaurant or bar for several months, and is a blighted area as defined in TCA 13-20-201, and constitutes a fire hazard to itself and to neighboring properties and to any fire personnel that might be called to the property. The Court finds that the Plaintiff has established that it is entitled to take the property by condemnation pursuant to TCA 13-20-202(a)(1), (2), & (3).

On June 26, 2019, new counsel for OEG entered a notice of appearance. Two days later, OEG filed a Rule 60 motion requesting that the trial court set aside the June 21 order

of possession, return the property to OEG, and set a hearing concerning the right of KCDC to acquire the property. OEG argued that the order of possession was void for lack of due notice of a hearing; it further asserted that KCDC's filing of a partial summary judgment motion entitled OEG to the time identified in the Tennessee Rules of Civil Procedure to respond to the motion prior to a hearing being held on the issue of possession. KCDC responded that OEG did not present clear and convincing proof requiring the grant of a Rule 60 motion. The court decided to hold in abeyance its ruling on the Rule 60 motion and to conduct an evidentiary hearing.

The hearing was conducted on August 8, 9, 12, and 13. During the hearing, KCDC acknowledged its desire to obtain the OEG property:

> Q: And so what did KCDC decide would be the best way to remedy the blight on 625 North Broadway?
>
> A: The only way to do it, the best way to do it, would be to buy Bar Marley. . . .
>
> It was probably . . . best to buy it because [Mr. Boyers] had entertained – he had mentioned that he would be willing to sell if the price was right.
>
> Q: And since you couldn't agree on a price, you couldn't agree on a purchase with him, was it KCDC's decision to condemn?
>
> A: Yes, condemn for blight.

After the close of KCDC's proof, OEG moved for an involuntary dismissal of KCDC's condemnation action pursuant to Rule 41 of the Tennessee Rules of Civil Procedure. OEG argued, *inter alia*, that the failure of KCDC to first allow OEG 30 days to request City Council approval before KCDC's filing of its complaint required dismissal, and that the Redevelopment Plan violated minimum requirements of due process and is therefore unconstitutional on its face and as applied to OEG. As part of OEG's proof, Mr. Boyers testified, *inter alia*, that he never received advanced notice from KCDC that its Board of Commissioners would be meeting on January 22, 2019, and did not receive any notice of the Board of Commissioners' January 22 approval of the condemnation action within 30 days of the action. In KCDC's response to the motion, it contended, *inter alia*, that the Redevelopment Plan's terms did not require KCDC to give OEG any notice of the Board of Commissioners' January 22, 2019, decision to initiate this proceeding. KCDC stated, "[T]hat provision about city council approval, that's something that's just in the plan; it's not in the statute. There's no statutory requirement that KCDC give any kind of notice pursuant to the statute. . . ."

The trial court denied the motion for involuntary dismissal, holding that KCDC had met its burden of proof at that time. In a written order, the court observed as follows:

> THE COURT: Well, . . . [w]ith everything the Court has before it, the Court is of the opinion that notice was properly given under the statute. The statute doesn't require that notice be hand delivered to a respondent and there's nothing that requires that specific notice be given. With everything that the Court has at this point, the Court is of the opinion that the petitioner has met their burden. . . .

The court's final ruling read as follows:

> Pursuant to Tenn. Code Ann. § 29-17-101, et seq., and 29-17-501, et seq., KCDC . . . filed a petition to condemn property owned by Orchard Entertainment Group . . . . The property had numerous liens for taxes and other title issues when it was purchased.
>
> * * *
>
> Prior to the condemnation proceedings, KCDC sent numerous letters to the defendant, some of those dated … May 31, 2017, July 19, 2017, November 27, 2017 and December 15, 2017 … advising the owner of code violations and the Redevelopment Plan.
>
> . . . Exhibit 7 in the record lists various code violations for the property owner. Also the fire marshal conducted an inspection of the exterior of the building on June 20th, 2019 and cited several code violations which Deputy Fire Marshal[] Donald "Sonny" Partin testified could be dangerous to patrons and fire department personnel in the event of a fire.
>
> * * *
>
> The Plan . . . state[s] that if KCDC identifies a specific property as blighted within the redevelopment area, KCDC anticipates issuing a request for a redevelopment proposal from the existing owner … of that property within 60 days from the date the determination has been made. KCDC will request the existing owner of the blighted property to submit to KCDC a redevelopment proposal specifying the intentions of such owner for redevelopment of that owner's property.

The record shows . . . that KCDC sent such a letter to Orchard Entertainment on November 27, 2017 demanding a redevelopment proposal which was ignored by the defendant.

The Plan . . . states the advisory board will examine the proposal . . . .

Here the defendant complains that KCDC failed to follow their own policy because they did not give the defendant[] an opportunity to be heard. However, there is nothing for the advisory board to do in this instance. There was nothing that the advisory board could have reviewed because the defendant[] failed to follow the directions in the letter of November 27, 2017 by providing a redevelopment proposal, as was stated in the November 2017 letter. Therefore this argument is misplaced and must fail.

KCDC gave the landowner numerous opportunities, both in person and by correspondence, to comply with codes and bring his property into compliance. However, they were met with no response by the property owner until this Complaint for condemnation was filed.

* * *

Because Mr. Boyers was given numerous opportunities by KCDC to comply with codes and to try to work with KCDC to redevelop the property, he cannot now come in and blame KCDC for his failure to act given the numerous occasions that he was given.

* * *

Under Tenn. Code Ann. § 13-20-105, private property taken by eminent domain is restricted under certain conditions. The housing authority created under this chapter shall not have the power to take by eminent domain private property in an urban renewal area for the purposes of resale if the owner of the same desires to develop such owner's own property and if the designated reuse of the property in the urban renewal plan is such that the owner's parcel can be redeveloped by itself without affecting the objectives of the urban renewal plan as to

- 10 -

the owner's parcel or adjoining or adjacent property thereto and the owner signs an agreement with the housing authority to abide by the urban renewal plan in any development thereof.

In this case, Mr. Boyers has not signed any such plan.

In this case, this Court can find no reason to determine that KCDC acted arbitrarily or capriciously or unconstitutionally in any way. In fact, the Court is convinced by clear and convincing evidence that KCDC tried for several years to work with Mr. Boyers to try to help him with his property but he refused to work with KCDC.

Based on everything the Court has before it, the Court affirms its prior ruling of June of this year.

OEG filed a timely notice of appeal.

## II. ISSUES

The issues raised on appeal by OEG are as follows:

a. Whether the trial court erred by giving KCDC possession of the property without a duly noticed hearing on the issue of possession and failing to return possession of the property to OEG prior to a later hearing on the issue of possession because OEG lost possession of its property prior to notice of a hearing on the issue of possession.

b. Whether the trial court erred by not dismissing KCDC's condemnation action because KCDC did not comply with KCDC's own rules and regulations in the Redevelopment Plan when instituting the instant condemnation proceeding.

c. Whether the trial court erred by not dismissing KCDC's condemnation action because KCDC violated OEG's rights under the Due Process Clause and Article 1, section 8 of the Tennessee Constitution by not giving OEG notice of the KCDC Board of Commissioner's approval of the instant condemnation proceeding.

d. Whether OEG is entitled to its reasonable attorney fees and other expenses incurred in the trial court and during this appeal.

## III. STANDARD OF REVIEW

Review of the trial court's findings of fact is *de novo*, upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d); *Alexander v. Inman*, 974 S.W.2d 689, 692 (Tenn. 1998). Review of the trial court's conclusions of law is *de novo*, with no presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

## IV. DISCUSSION

### A.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Article 1, section 8 of the Tennessee Constitution provides similar protections. *Lynch v. City of Jellico*, 205 S.W. 384, 391 (Tenn. 2006). "Due Process under the state and federal constitutions encompasses both procedural and substantive due process protections." *Id.* "The most basic principle underpinning procedural due process is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner." *Id.*

In *Rasheed v. Tennessee Dep't of Safety*, No. 01-A-019203-CH-00078 1992 WL 210484 (Tenn. Ct. App. Sept. 2, 1992), we observed that "[n]otice and opportunity to be heard are the minimal requirements of due process." *Id.* at *2. Thus,

> Adequate notice is an essential due process ingredient. The right to a hearing has little reality or worth unless the affected parties are informed that the matter is pending and can choose for themselves whether to appear or default, acquiesce or contest.
>
> Notice that is a mere gesture is no notice at all.

*Id.* (citations omitted). "'Confiscations without a judicial hearing, after due notice' are void." *Id.*

KCDC's authority under the Redevelopment Plan to condemn property must be narrowly construed. Tennessee Code Annotated section 29-17-101 explicitly states that "[i]t is the intent of the general assembly that the power of eminent domain shall be used sparingly, and that laws permitting the use of eminent domain shall be narrowly construed so as not to enlarge, by inference or inadvertently, the power of eminent domain." The plain language of section 29-17-101 does not simply require a narrow construction of just

- 12 -

*statutes* "permitting the use of eminent domain;" it requires a narrow construction of all "*laws* permitting the use of eminent domain." Tenn. Code Ann. § 29-17-101. The Redevelopment Plan before this court, adopted by the City pursuant to resolution R-189-07, is a "law" authorizing KCDC to use the power of eminent domain. Accordingly, the Redevelopment Plan must be "narrowly construed so as not to enlarge, by inference or inadvertently, [KCDC's] power of eminent domain." *See id.*

Our review reveals that KCDC violated the Redevelopment Plan by depriving OEG of an opportunity to exercise the right to request City Council review prior to KCDC instituting the condemnation proceeding. The Plan allowed 30 days in which to request review and approval from the City Council prior to the initiation of an eminent domain proceeding. OEG's right accrued upon the January 22, 2019, Board of Commissioners' approval of the eminent domain action. Instead of allowing OEG 30 days in which to request City Council review, KCDC filed its complaint in this proceeding on the very next day, January 23, 2019. OEG received no notice in the ensuing 30-day period that the KCDC Board of Commissioners had acted on January 22, 2019. We find that KCDC violated the provisions of the Redevelopment Plan that require City Council review upon request by a property owner. By not holding KCDC to this requirement of the Redevelopment Plan, the trial court effectively "enlarged" KCDC's power of eminent domain under the Redevelopment Plan by allowing KCDC to ignore procedural requirements. City Council review is a significant protection the Redevelopment Plan affords to OEG – it constitutes a check on KCDC's otherwise unmitigated power under the Redevelopment Plan.

B.

Pursuant to Tennessee Code Annotated section 29-17-106(b)(2), if the final judgment is that KCDC cannot acquire the property by condemnation, KCDC shall be responsible for OEG's reasonable attorney fees and expenses incurred in this proceeding. This includes amounts incurred during appeal. Accordingly, we award OEG its reasonable attorney fees and expenses incurred in this proceeding, including such fees and expenses incurred on appeal.

## V. CONCLUSION

The judgment of the trial court is reversed and this cause is remanded for further proceedings as may be required, consistent with this opinion. The trial court is directed to return possession of the Property to OEG prior to any new hearing on KCDC's right to acquire the Property. Costs of the appeal are assessed to the appellee, Knoxville Community Development Corporation.


_____
JOHN W. MCCLARTY, JUDGE